STATE OF CONNECTICUT *v.* SAMUEL SULLIVAN
(3013)

BORDEN, DALY and BIELUCH, Js.

Argued January 8—decision released May 26, 1987

*Martin Zeldis,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Susan C. Marks,* deputy assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Jane Brandfon Emons,* assistant state's attorney, for the appellee (state).

BORDEN, J. After a jury trial, the defendant was convicted of risk of injury to a minor in violation of General Statutes § 53-21.[1] On appeal from the judgment of conviction, he claims that the trial court erred (1) in violating its sequestration order by allowing a mother, who was to be a witness, to be present during the testimony of her minor daughter, (2) in permitting the state to amend its information to charge an additional or different offense, (3) in enlarging the offense charged in the information by its jury instructions, (4) in erroneously charging on circumstantial evidence, and (5) in denying the defendant's motion to poll the jury. We find no reversible error.

---

[1] The defendant had also been charged with sexual assault in the fourth degree in violation of General Statutes § 53a-73a. He was acquitted of this charge.

The jury could reasonably have found the following facts. In July, 1982, Shirley McGill[2] was in the process of moving her family into a second floor apartment in New Haven. She was accompanied by her nine year old daughter, Kim, and her friend, Beverly Raney. At around 2:30 p.m., Kim looked out the kitchen window and saw the defendant, a young man[3] and the victim, a four year old boy. According to her testimony, the defendant was lying on his back, with his hands behind his head. The victim had a small stick and was moving it in front of the defendant's eyes. The defendant then pulled down his pants to his knees, and the victim touched the defendant's exposed penis with the stick and moved it back and forth. Kim told the victim and the defendant to get out of the alley and then called her mother, who was working in another room. McGill testified that she came into the kitchen, looked out the window, and saw the defendant lying on the ground with the victim sitting between his legs. She testified that the defendant was holding the victim's hand on the defendant's erect penis. McGill yelled at the victim and the defendant to get out and called her friend, Raney, to look out the window. Raney testified that she observed the defendant with one hand behind his head and one hand on top of the victim's hand which was stroking his erect penis.

The victim's mother was at work during this incident and, upon her return, McGill told her what had happened. She confronted the defendant and asked him what he did to her son. The defendant responded: "I

[2] In the transcript, Shirley McGill is also referred to as Shirley McGillis. For the purposes of this opinion, we will refer to her as "McGill."

[3] Although direct evidence of the defendant's age was not introduced into evidence, testimony in the absence of the jury indicated that he was eighteen years old. Thus, the jury could infer from his appearance the general difference in age between the defendant and the victim.

am mentally retarded. They can't do anything to me." He laughed at her and also said, "If that f'n lady wasn't looking out of the window . . . . " Thereafter, the police were contacted and the defendant was arrested.

The defendant did not testify at trial nor did he present any witnesses or evidence.

## I

The defendant first claims that the trial court erred when it violated its witness' sequestration order by allowing McGill to be present during the testimony of her daughter, since both were to be witnesses at trial. Prior to trial, the defendant moved to sequester all potential witnesses during any hearings and at trial. The state made no objection to the motion and it was granted by the court. Thereafter, the state indicated that it intended to call McGill and her daughter at trial, and that it wanted the mother present during her daughter's testimony. The state also expressed its preference in having the daughter testify first. The defendant objected on the ground that the mother would hear her daughter's testimony and might fashion her own testimony to correspond more closely to it.[4] The court nonetheless amended the sequestration order to permit the daughter to testify first, in the presence of her mother. The defendant claims that the trial court's amendment to the sequestration order constitutes reversible error because it led to the tainting of McGill's testimony. More specifically, the defendant

---

[4] The defendant had agreed to an amendment of the sequestration order if McGill testified first and then was present during her daughter's testimony. We note that this would have foreclosed any possible taint. The state, however, expressed a preference in having the child testify first since this would be consistent with the chronology of events. The trial court rendered its decision in accordance with the state's preference.

claims that McGill was given the opportunity to reshape her testimony to conform more closely with her daughter's. We disagree.

The state concedes, as it must in light of *State* v. *Stovall,* 199 Conn. 62, 505 A.2d 708 (1986), and Practice Book § 876, that the trial court erred in violating the sequestration order and allowing McGill to be present during the testimony of her daughter. Practice Book § 876 provides in relevant part that "[t]he judicial authority upon motion . . . of the defendant *shall* cause any witness to be sequestered during the hearing on any issue or motion or during any part of the trial in which he is not testifying." (Emphasis added.) See also General Statutes § 54-85a.[5] In *State* v. *Stovall,* supra, our Supreme Court, after taking note of Practice Book § 876 and General Statutes § 54-85a, held that a trial court commits error when it violates a sequestration order. In that case, the trial court refused to excuse a witness in response to the defendant's motion, during a colloquy between the defense counsel and the court over an alleged inconsistency in the testimony of the witness. While the court found error in this ruling, it could not conclude that the failure to sequester the witness was "probably harmful to the defendant." Id., 68. We hold, also, that the failure of the trial court in this case to observe the sequestration order was error. Our finding of error does not end the discussion, however. As the court in *State* v. *Stovall,* supra, 69, pointed out, "[t]he burden is on the defendant to show prejudice in the trial court's failure to observe its sequestration order . . . ." Id., 69. This standard applies when nonconstitutional error is

---

[5] General Statutes § 54-85a provides: "In any criminal prosecution, the court, upon motion of the state or the defendant, shall cause any witness to be sequestered during the hearing on any issue or motion or any part of the trial of such prosecution in which he is not testifying."

involved. *State* v. *Silveira,* 198 Conn. 454, 479, 503 A.2d 599 (1986). The defendant has failed to carry this burden.

"The purpose of a sequestration order is to prevent a witness from fashioning his testimony to correspond to the statements of others in the courtroom . . . ." *State* v. *Stovall,* supra, 67–68. This purpose was not thwarted under the facts of this case. McGill testified at a pretrial motion to dismiss, untainted by exposure to her daughter's testimony. Thus, the defendant had an opportunity to hear her version of events uncolored by the subsequent testimony of her daughter. Any fashioning of her testimony at trial to correspond to that of her daughter at trial could have been exposed by the defendant on cross-examination. A review of McGill's cross-examination fails to disclose any attempt by the defendant either to expose inconsistencies between her pretrial testimony and her testimony at trial, or to demonstrate consistencies between her daughter's testimony and her testimony attributable to the fact that she had already heard her daughter's testimony. This is not surprising since a review of McGill's pretrial and trial testimony, and of her daughter's trial testimony, fails to disclose any such material inconsistencies or consistencies. The inconsistencies between McGill's pretrial testimony and her testimony at trial were "marginal in the extreme" and with "little or no impeachment value"; *State* v. *Stovall,* supra, 69; and the degree of consistency between her daughter's testimony and her testimony at trial was wholly explainable by reference to factors other than the order of their testimony.[6] We therefore hold that any error

---

[6] The defendant claims, as an example of taint of McGill's testimony, the facts that at the pretrial hearing McGill testified that the defendant's thighs were not exposed; that at trial, her daughter testified that the thighs were exposed; and that at trial, McGill added the detail that the victim was sitting side saddle across the defendant's thighs, but did not indicate whether

flowing from the trial court's failure to observe the sequestration order was harmless.

We point out further that the defendant's failure to impeach McGill with her pretrial testimony undermines the defendant's claim that prejudice flowed from the violation of the sequestration order. Trial counsel was, of course, aware of the potential taint that could flow from McGill's exposure to her daughter's testimony, having argued it in opposition to the amendment of the sequestration order. Additionally, the trial court, in response to trial counsel's concerns, pointed out that defense counsel could expose any inconsistencies between the pretrial testimony and trial testimony on cross-examination. The failure of trial counsel to attempt, on cross-examination of McGill, to show any harm that may have flowed from the violation of the sequestration order is strong evidence that he did not deem it to be prejudicial. Defense counsel's silence at trial is a powerful signal that he did not consider the court's action to constitute the harmful error which he now presses on appeal. *State* v. *Huff,* 10 Conn. App. 330, 338, 523 A.2d 906 (1987). "Under the circumstances, it appears that trial counsel chose not to pursue the question[s] because he concluded, as have we, that any purported inconsistency between the witness' testimony on the motion and her testimony at trial was marginal in the extreme." *State* v. *Stovall,* supra, 68–69.

---

or not the defendant's thighs were exposed. We make three observations. First, this testimony reflects the fact that the two witnesses, mother and daughter, did not observe the defendant simultaneously. Thus, there was little danger that McGill's testimony might be fashioned to correspond to her daughter's, when it is apparent that they witnessed the event at different times. Second, McGill's failure to testify that the defendant's thighs were not exposed is attributable more to the absence of a direct question on the subject rather than an inconsistency in her testimony. Third, we note that McGill did, in fact, testify during the pretrial hearing that the victim was sitting side saddle across the defendant's legs.

## II

The defendant next claims that the trial court erred by allowing the state to amend its information, after trial had begun, to charge an additional or different offense. We disagree.

The defendant was charged by a long form information with risk of injury to a minor in violation of General Statutes § 53-21.[7] The original information alleged that the defendant "did unlawfully or wilfully cause or permit the morals of a four year old child . . . to be impaired, inter alia by dropping his pants, exposing his penis and compelling and encouraging the young child to touch his penis, all in violation of Section 53-21 of the Connecticut General Statutes." After voir dire had begun, the state sought permission to amend the risk of injury count to read, in part: "[The defendant] did unlawfully or wilfully cause or permit the morals of a four year old child . . . to be impaired, *or did an act likely to impair* the morals of [the minor victim] . . . ." (Emphasis added.) The stated objective of the amendment was to charge both parts of the risk of injury statute. Over the defendant's objection, the trial court permitted the amendment. The defendant claims on appeal that this amendment was in direct contravention of Practice Book § 624.

Practice Book § 624 applies to amendments after trial has begun. We recently held that for purposes of Practice Book § 624 a trial begins with the voir dire of prospective jurors. *State* v. *Cole,* 8 Conn. App. 545,

---

[7] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

551–52, 513 A.2d 752 (1986).[8] Practice Book § 624 provides in relevant part that "[a]fter commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information . . . at any time before a verdict or finding *if no additional or different offense is charged* and no substantive rights of the defendant would be prejudiced." (Emphasis added.) This rule serves to implement the defendant's right to fair notice of the charges against him. "The state's right to amend must be limited to substitutions that do not charge the defendant with an additional or different offense because the defendant has a constitutional right to fair notice, prior to the commencement of trial of the charges against which he must defend himself. See U.S. Const., amend. VI; Conn. Const., art. I § 8." *State* v. *Jacobowitz,* 182 Conn. 585, 591, 194 A.2d 408 (1981). Under Practice Book § 624, unless the original and the amended information charge the defendant with the *same crime,* an amendment is permissible only to charge a lesser included offense. See *State* v. *Cole,* supra, 552. An amendment which charges a new offense, but not a lesser included offense, is a substantive alteration of the information which is prohibited by Practice Book § 624. *State* v. *Cole,* supra.

The original and the amended informations both charged the defendant with the same crime; *State* v. *Jacobowitz,* supra; namely risk of injury to a minor in violation of General Statutes § 53-21. Therefore, the amendment was not a substantive alteration of the information, but merely charged two methods of com-

[8] The trial court, believing that voir dire did not commence trial, permitted the amendment under Practice Book § 623, which authorizes the state to add counts to an information if trial has not commenced and no substantive rights of the defendant would be prejudiced. The subsequent decision in *State* v. *Cole,* 8 Conn. App. 545, 551–52, 513 A.2d 752 (1986), makes it clear that voir dire does commence trial.

mitting the same crime. This case is analogous to *State* v. *Wallace,* 181 Conn. 237, 435 A.2d 20 (1980). In *Wallace,* the defendant was originally charged with robbery in the first degree, in violation of General Statutes § 53a-134 (a) (2), which requires proof that the defendant was armed with a deadly weapon. During the trial the court permitted the state to amend the information to charge a violation of subsection (a) (4) of the same statute, which requires proof that the defendant displayed or threatened the use of what he represented by his conduct to be a pistol, revolver, rifle or other firearm. Our Supreme Court held, in the face of a claim that Practice Book § 624 had been violated, that "[t]he amended information did not charge an additional or different offense. Both the original and the amended informations charged the defendant with the *same* crime of robbery in the first degree." (Emphasis added.) *State* v. *Wallace,* supra, 239; see also *State* v. *Scognamiglio,* 202 Conn. 18, 24, 519 A.2d 607 (1987) (General Statutes § 53a-54c divides crime of felony murder into two methods of committing same crime, not into two crimes); *State* v. *Kitt,* 8 Conn. App. 478, 513 A.2d 731 (1986), cert. denied, 202 Conn. 801, 518 A.2d 648 (1987); compare *State* v. *Jacobowitz,* supra, 590–93 (impermissible under Practice Book § 624 to amend original information charging the crime of attempted murder, in violation of General Statutes §§ 53a-49 [a] [2] and 53a-54a [a], to charge the crime of threatening, in violation of General Statutes § 53a-62 [a] [1]), with *State* v. *Cole,* supra (impermissible under Practice Book § 624 to permit the state to amend an information, charging assault in the third degree, to a charge of attempted assault in the first degree). Because both the original and amended informations charged the defendant with the same crime, namely, impairing the morals of a minor in violation of General Statutes § 53-21, the amendment was properly permitted.

The defendant's claim that General Statutes § 53-21 is "separable" under *State* v. *Dennis,* 150 Conn. 245, 248, 188 A.2d 65 (1963), does not change our holding. In *State* v. *Dennis,* supra, our Supreme Court held that "[t]he use of the disjunctive 'or' between the two parts of [General Statutes § 53-21] indicates a clear legislative intent of separability." The purpose of the statute "in combining the two parts in a single section was to proscribe two general types of behavior likely to . . . impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiesence in, or the creation of situations inimical to the minor's moral . . . welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral . . . well-being." (Citation omitted.) Id., 250. The defendant urges us to apply a test of separability when determining whether an additional or different offense has been charged by an amendment. He cites no support for this notion, and our reading of *State* v. *Jacobowitz,* supra, *State* v. *Wallace,* supra, and the later cases convinces us that when an amendment charges the defendant with the same crime, as it did in the present case, it is permissible.

## III

The defendant next claims that the trial court unconstitutionally enlarged the crime charged in the information by its instructions to the jury. He claims, once again, that this violated his constitutional right to fair notice. He concedes that he neither took an exception to the charge nor raised this claim at trial. He contends, however, that his claim is reviewable under the second exception created by *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), because the "record adequately supports a claim that [he] has clearly been deprived of a fundamental constitutional right and a fair trial." We apply the recently clarified *Evans* formulation; *State*

v. *Thurman,* 10 Conn. App. 302, 306–307, 523 A.2d 891 (1987); and conclude that while the defendant has raised an issue, which by its terms, implicates a constitutional right; *State* v. *Scognamiglio,* supra; *State* v. *Franko,* 199 Conn. 481, 508 A.2d 22 (1986); *State* v. *Newton,* 8 Conn. App. 528, 513 A.2d 1261 (1986); the record does not adequately support it. See, e.g., *State* v. *Huff,* supra.

The second count of the information charged, inter alia, that the defendant "did unlawfully or wilfully cause or permit the morals of a four year old child to be impaired." In its charge to the jury, the court instructed that the defendant could be found guilty if the child was placed in a situation where its morals were *likely* to be impaired. This charge reflects the language of General Statutes § 53-21, which forbids any person to place a child "in such a situation that . . . its morals [are] *likely* to be impaired." (Emphasis added.) See footnote 7, supra.

The defendant claims that the information charged actual impairment of morals as the theory of criminal liability, and that the court's instructions enlarged the offense to charge an alternate theory of liability, namely, conduct *likely to impair* morals. From this, the defendant claims that the trial court went beyond the offense of risk of injury to a minor as charged in the information, thereby improperly enlarging the crime charged and, concomitantly, allowing the defendant to be convicted on an uncharged theory of liability, of which he had no notice.

The gist of General Statutes § 53-21 is not conduct which results in the actual impairment of morals. See *State* v. *Apostle,* 8 Conn. App. 216, 243, 512 A.2d 947 (1986) (injury not an element of the offense). Rather, the gist is conduct which is likely to impair the morals of a child under the age of sixteen. " ' [T]he creation

of a prohibited situation is sufficient.' *State* v. *Perruccio,* 192 Conn. 154, 160, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984)." *State* v. *Newton,* supra, 536. We conclude that, because the information as fairly read, and understood at trial by the court, the state and the defendant, charged the defendant in accordance with these principles, the defendant's claim of lack of notice by unconstitutional enlargement is not supported by the record and therefore not entitled to further review under *Evans.* See *State* v. *Thurman,* supra.

The information in this case accused the defendant "of risk of injury to a minor child [in that the defendant] . . . did unlawfully or wilfully cause or permit the morals of a four year old child . . . to be impaired, inter alia by dropping his pants, exposing his penis and compelling and encouraging the young child to touch his penis, all in violation of section 53-21 of the Connecticut General Statutes." Thus, although the information did not contain the word "likely," its reference to the statute gave clear notice to the defendant that he was charged with conduct which violated a statute, the gist of which was the likely impairment of the morals of a young child. The information, fairly read, did not purport to charge the defendant with actually impairing the morals of the victim, a theory of liability which is not within the proscription of General Statutes § 53-21. Rather, it charged him with conduct, namely, compelling and encouraging the victim to touch his exposed penis, which was likely to impair the morals of the four year old victim, a theory of liability which is within the proscription of the statute.

It is clear, moreover, that at trial the defendant, as well as the court and the state, understood the inartfully worded information to charge the defendant with engaging in conduct likely to impair the victim's morals, rather than actually impairing his morals. The defend-

ant took no procedural steps to challenge the information on the basis that it charged a theory of liability which was not within the statute it involved. Before the presentation of evidence, the court delivered preliminary instructions to the jury that the defendant was accused of conduct "likely to impair the minor's morals . . . ." The defendant did not except to the court's instruction in this regard. Indeed, as part of these preliminary instructions the court erroneously did include a reference to an uncharged part of the statute, namely, conduct likely to impair the minor's "physical welfare," a reference to the "health" portion of the statute. See footnote 7, supra. When the defendant properly brought this to the court's attention, the court instructed the jury, without exception by the defendant, that the applicable portion of the statute involved conduct "likely to impair the morals" of the victim. Similarly, when the court instructed the jury at the end of the case, it again charged the jury, without exception by the defendant, that the defendant was charged with conduct likely to impair the victim's morals.

The clear and overwhelming message of this record, therefore, is that despite the wording of the information the defendant had full notice of the contours and the details of the charge against him. His claim to the contrary, therefore, lacks support in the record and does not warrant further review. See *State* v. *Stevenson,* 198 Conn. 560, 572, 504 A.2d 1029 (1986).

## IV

The defendant's fourth claim of error is that the trial court's charge on circumstantial evidence impermissibly diluted the standard of proof for conviction. The defendant argues that the trial court's instructions concerning the right of the jury to draw inferences from circumstantial evidence relieved the state of the burden of proving all elements of the crime beyond a rea-

sonable doubt. Because he failed to object to the instructions, the defendant presents his claim under *State* v. *Evans,* supra. This court has recently granted *Evans* review to numerous similar claims; see *State* v. *Dullivan,* 10 Conn. App. 474, 523 A.2d 1353 (1987); *State* v. *Perez,* 10 Conn. App. 279, 523 A.2d 508 (1987); *State* v. *Hoeplinger,* 9 Conn. App. 147, 517 A.2d 632 (1986), cert. granted, 202 Conn. 805, 520 A.2d 1286 (1987); and will do so again.

The trial court instructed the jury as follows: "Proof beyond a reasonable doubt does not mean that you must have direct evidence supporting a fact. You may apply the rule of circumstantial evidence. This rule involves the offering of evidence of facts from which you are asked to infer the existence of another fact or set of facts. Such an inference may be made provided two elements in the application of this rule [of circumstantial evidence are] satisfied. One is that the fact from which you are asked to draw the inference has itself been proven beyond a reasonable doubt and, two, that the inference asked to be drawn is not only logical and reasonable, but is strong enough so that you can find that it is more probable than not that the fact to be inferred is true." This instruction is almost identical to the jury instruction that resulted in reversible error in two recent Supreme Court cases; *State* v. *Whelan,* 200 Conn. 743, 755–58, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); *State* v. *Rodgers,* 198 Conn. 53, 56–59, 502 A.2d 360 (1985); and a recent Appellate Court case; *State* v. *Dullivan,* supra. In numerous other Supreme Court and Appellate Court cases, however, this instruction has been held not to constitute reversible error. *State* v. *Mullings,* 202 Conn. 1, 11–14, 519 A.2d 58 (1987); *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986); *State*

v. *Hoeplinger,* supra, 158–60; *State* v. *Farrar,* 7 Conn. App. 149, 156, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986).

In *Whelan,* our Supreme Court adopted the reasoning of this court in *State* v. *Farrar,* supra. In *Farrar,* we held that "[w]here the principal factual issue is intent, which is characteristically proven by circumstantial evidence; see *State* v. *Chace,* 199 Conn. 102, 105, 505 A.2d 712 (1986); the court's instructions regarding the use of the circumstantial evidence as proof of this essential element are subject to close scrutiny. See *State* v. *Rodgers,* supra, 58. Where . . . the principal factual issue is identity, which is not classically dependent upon circumstantial evidence for its proof, the trial court's instructions may be read as a whole to determine whether it is reasonably possible that the jury was misled by an erroneous explanation regarding the use of circumstantial evidence. See *State* v. *Reddick,* supra, 133." *State* v. *Farrar,* supra, 155–56; see also *State* v. *Whelan,* supra, 757.

The defendant claims that this case is akin to the *Rodgers-Whelan* line of analysis because it involves a factual issue which is classically dependent on circumstantial evidence. The defendant argues that the jury was required to infer, from the evidence of his conduct with the victim, that his conduct was likely to impair the morals of the victim. Thus, he argues, *Rodgers* and *Whelan* apply, and the court's charge constituted reversible error.

We agree with the defendant that the jury must have used the process of inference drawing in order to find that the defendant's conduct was likely to impair the victim's morals. We disagree, however, that the critical inference which the jury was required to draw, namely, that the defendant's conduct was likely to impair the morals of the victim, was drawn from cir-

cumstantial evidence, namely, the evidence of the defendant's conduct. In this case, the jurors were required to draw that inference, or to reach that conclusion, not from the defendant's conduct, but from their own knowledge, experience and common sense as adults. To put it another way, once the jury was convinced that the defendant did perform the sexual conduct with the victim as described by the state's witnesses, General Statutes § 53-21 required that the jury decide whether that conduct was conduct which was likely to impair the morals of a four year old boy, regardless of whether the defendant's conduct in fact did impair the morals of this particular four year old boy. Thus, the critical inference was required to be drawn by the jury, not from the evidence of the defendant's conduct, but from the jury's pooled experience and knowledge.

## A

We first consider whether the error which led to reversal in *Whelan* and *Rodgers* is limited to the factual issue of intent, or whether it extends to another issue which is proven by the process of inference from circumstantial evidence, as the defendant claims occurred in this case. We see no reason to confine that analysis to the issue of intent. The root of the error identified in *Whelan* and *Rodgers* is that the jury charge dilutes the state's burden to prove guilt beyond a reasonable doubt on an essential element of the crime charged. *State* v. *Whelan,* supra, 756; *State* v. *Rodgers,* supra, 57. Since the state has that burden on all such elements, that claim should apply to an erroneous charge which taints the jury's deliberative process on any disputed element of the crime charged which is primarily dependent on circumstantial evidence for its proof.

We can find no indication in this record that either the intent or the identity of the defendant was in dispute in this case. Although the final arguments of the state and the defendant were not recorded, we can glean from the defendant's cross-examination of the witnesses that his principal theory of defense was that the state's witnesses were inaccurate in their description of his conduct. In short, at issue in this case were two sets of facts: (1) Did the defendant engage in the sexual conduct with the victim as described by the witnesses? and (2) was that conduct likely to impair the morals of the victim?

Proof of a fact by the use of circumstantial evidence usually involves a two-step process. A fact is first established by direct evidence, which is ordinarily eyewitness or other direct testimony. That direct evidence can serve as a basis from which the jury infers another fact. Thus, the direct evidence may operate as circumstantial evidence from which a fact is inferred by the jury. *State* v. *Rome,* 64 Conn. 329, 334, 30 A. 57 (1894); 1A J. Wigmore, Evidence (Tillers Rev. 1983) § 25, p. 955.

In this case, the first set of facts to be proved by the state, namely the defendant's conduct with respect to the victim, was not dependent in any way on circumstantial evidence. It was established through the eyewitness testimony of the witnesses. That eyewitness testimony was direct evidence from which the jury could find the first set of facts at issue, namely, the nature of the defendant's conduct with regard to the victim.

We reject the defendant's argument, however, that the direct evidence was itself circumstantial evidence of the second fact to be proven by the state, namely, that the defendant's conduct was likely to impair the morals of the victim. The jury was required to decide,

first, whether on the basis of the witnesses' eyewitness testimony the defendant engaged in the alleged sexual conduct with the victim, and, second, whether, *based on their own knowledge and experience,* that conduct was likely to impair the morals of the victim. Although this second decision of the jury could only have been arrived at by the process of inference, that inference was not drawn from the evidence of the defendant's conduct, but from the collective knowledge and experience of the jurors as to what kind of conduct is likely to impair the morals of a four year old victim.

B

"General Statutes § 53-21 proscribes 'two general types of behavior likely to injure physically or to impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare; see *State v. Smith,* 149 Conn. 487, 181 A.2d 446 [1962]; and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being. See *State v. Coulombe,* 143 Conn. 604, 124 A.2d 518 [1956]; *State v. Silver,* 139 Conn. 234, 93 A.2d 154 [1952].' *State v. Dennis,* 150 Conn. 245, 250, 188 A.2d 65 (1963); *State v. Apostle,* 8 Conn. App. 216, 242, 512 A.2d 947 (1986)." *State v. Newton,* 8 Conn. App. 528, 532–33, 513 A.2d 1261 (1986). "In both instances, the focus of the statute is on the behavior of the defendant, not on the character, history or experience of the victim." *State v. Apostle,* supra. "The relevant inquiry [is] whether the defendant did any act . . . which was *likely to impair the . . . morals of the victim.*" (Emphasis added.) Id. Lack of an actual injury to either the physical health or morals of the victim is irrelevant; id., 243; actual "injury is not an element of the offense." Id. "[T]he creation of a prohibited situation is sufficient." *State v. Perruccio,* 192 Conn. 154, 159–60, 471 A.2d 632, appeal

dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984). Under the second category of conduct prohibited by General Statutes § 53-21, noted above, "the state must prove (1) an act (2) *likely to impair* the morals or health (3) of a child under the age of sixteen." (Emphasis added.) *State* v. *McCall,* 187 Conn. 73, 91, 444 A.2d 896 (1982). "The second element [involves] *likelihood of impairment of the morals* or health of a child . . . ." (Emphasis added.) Id. In enacting General Statutes § 53-21, "[t]he legislature undoubtedly had in mind acts of such a nature that a general criminal intent could be inferred from them." *State* v. *Dennis,* supra.

From these precedents and principles, it is clear that the jury's decision-making process under General Statutes § 53-21, as charged in this case, was first to decide whether the defendant engaged in the sexual conduct with the victim, as described by the state's witnesses. If so, it thus had to decide, *not* whether there was any actual harm or impairment of the victim's morals resulting from that conduct, but whether that conduct rose to the level of conduct which was *likely* to have impaired the morals of a victim four years of age. That decision, we believe, involved an inference or conclusion drawn, *not* from the evidence of the defendant's conduct, but from the individual experience of the jurors as men and women living in contemporary society. In reaching its conclusion, the jury drew on its knowledge, common sense and experience as to the kind of conduct which is likely to impair the morals of young children. This inference drawing process has been approved by our Supreme Court in an analogous situation, where the following jury charge was approved: " 'This is the type of activity that Connecticut General Statutes [§] 53-21 seeks to protect children from. And, that is the type of activity which is likely, if it did take place, to impair

. . . the morals of a child.' " *State* v. *Storlazzi,* 191 Conn. 453, 467, 464 A.2d 829 (1983).

This analysis leads us to conclude that the trial court's instruction, although erroneous, did not amount to reversible error. While it gave the jury an erroneous burden of proof for the process of drawing inferences from circumstantial evidence, it was not reasonably possible that the jury was misled by it because the jury did not in this case draw the critical inference from circumstantial evidence.

## V

The defendant's final claim of error is that the trial court erred in refusing to grant his request to poll the jury for the basis of its verdict. Since the defendant had been charged with both alternate modes of violating General Statutes § 53-21, he claims that the failure to poll may have deprived him of his constitutional right to a unanimous jury verdict.

In requesting that the jury be polled,[9] the defendant stated the following as the legal basis:

"[Defense Counsel]: Your Honor, I think that the court, any time that the jury comes back with a verdict, can ask for a special verdict, and I would ask for a special verdict on either alternate of the charge of risk of injury.

"I wasn't the one who chose the charges here. I think it puts counsel in a dilemma in terms of an appeal into reciting what *lesser included* might be which I have requested, and it has been denied whether there is a *double jeopardy* of *inconsistent verdict* or whether there have been two verdicts in violation of *double jeopardy,* which may be more appropriate to one subsection of

---

[9] The defendant actually requested a special verdict, but both the defendant and the state have chosen to treat the request as a request to poll.

risk of injury than the other. I think that if we don't find that out, it takes away certain appellate issues that I have that I am unable to ascertain." (Emphasis added.)

The defendant is required to raise a claim distinctly at trial. Practice Book § 4185 (formerly § 3063). Exceptions to a trial court's ruling must be distinct and specific to preserve the claim. See *State* v. *Barrett,* 197 Conn. 50, 53 n.2, 495 A.2d 1044 (1985), rev'd, 479 U.S. 523, 107 S. Ct. 828, 93 L. Ed. 2d 920 (1987). "The requirement that the claim be raised 'distinctly' means that it must be 'so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked.' (Emphasis added.) *Woodruff* v. *Butler,* 75 Conn. 679, 682, 55 A. 167 (1903)." *State* v. *Carter,* 198 Conn. 386, 396, 503 A.2d 576 (1986). It is entirely unclear what claim the defendant was raising by his exception. While the defendant mentioned double jeopardy and inconsistent verdicts, he failed to raise the unanimity claim. We hold that the defendant failed to raise his claim distinctly at trial, and, therefore, did not adequately alert the trial court to the claimed error so that the court might have an opportunity to correct it. *State* v. *Carter,* supra. Further, since the defendant has failed to seek review under *State* v. *Evans,* supra, in this court, we decline to address this claim.

There is no error.

In this opinion the other judges concurred.