STATE OF CONNECTICUT *v.* JOHNNIE LOWE
(AC 17642)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued October 16, 2000—officially released January 2, 2001

*J. Brendan Sharkey*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *John T. Redway*, state's attorney, and *Russell C. Zentner*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Johnnie Lowe, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sale of a narcotic substance,

cocaine, in violation of General Statutes § 21a-278 (b),[1] and one count of sale of a narcotic substance, cocaine, within 1500 feet of a school in violation of General Statutes § 21a-278a (b).[2] The defendant claims that the trial court improperly (1) permitted a witness who had been sitting at the prosecution table to testify as to chain of custody issues involving the narcotics although the court previously had ordered the sequestration of witnesses, and (2) denied the defendant's requests to question the prosecuting attorney regarding chain of custody and, therefore, denied the defendant a fair trial. We affirm the judgment of the trial court.

Because this appeal arises out of evidentiary rulings made at trial, the following facts and procedural history are necessary for our resolution of this appeal. The jury reasonably could have found that, on January 18, 1996, while conducting undercover drug purchases for the Middletown police department, Officer Richard Batts drove his unmarked vehicle to the side of a road where the defendant was standing and offered to purchase

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. . . ."

[2] General Statutes § 21a-278a (b) provides in relevant part: "Any person who violates section 21a-277 or 21a-278 by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school . . . shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. . . ."

$20 worth of crack cocaine from him. The defendant walked along the street and, upon returning a few minutes later, told Batts that he should come back later because he could not get any at that time. Approximately two and one half hours later, Batts returned to the same area and waved to the defendant. The defendant directed Batts to drive into a parking lot, which was within 1500 feet of an elementary school, where he sold Batts three "rocks" of crack cocaine for $50. Each rock was contained in its own clear plastic bag.

Batts conducted a similar investigation in the same area on March 8, 1996. Batts again approached the defendant and asked him if he could buy some crack cocaine. The defendant replied that he did not have any but that he could get some. The defendant took Batts' $50, walked along the street and met with him at a nearby parking lot where the defendant gave him three "rocks" of crack cocaine.

During trial, to admit the narcotics into evidence, the prosecution attempted to establish its chain of custody. Testimony from several witnesses set forth the following chain of custody with respect to the narcotics sold on January 18, 1996. Batts immediately took the narcotics to Sergeant Frank Violissi, who was waiting in a nearby "safe area." Violissi then brought them to police headquarters, where he and Detective Scott Aresco conducted a field test that revealed positive results for crack cocaine. Aresco then secured the narcotics in the department's evidence room. From there, they were taken to Joel Milzoff of the Connecticut department of public health toxicology laboratory on January 25, 1996, where they remained until June 9, 1997. A similar chain of custody was testified about with respect to the narcotics sold on March 8, 1996; however, Batts gave the narcotics to Violissi and Detective Michael Kerkes. Kerkes field-tested them, and Milzoff retained them at the toxicology laboratory, where they remained, except

as hereinafter described, from March 14, 1996, to June 9, 1997.

The defendant objected to the prosecution's various attempts to admit the evidence on the ground that the state failed to establish a complete chain of custody. The court agreed that the chain was incomplete because the state had not established custody from June 9, 1997, when the evidence was no longer in the possession of the toxicology laboratory, to July 14, 1997, when the trial commenced.

The prosecution was unable, however, to account for that time period without the testimony of James Gill, an inspector for the state's attorney's office, who had been seated at the prosecution table since the trial began. Because the court previously ordered sequestration such that witnesses could not be present during other witnesses' testimony and could not discuss their testimony at any time with any witness,[3] the court heard argument, outside the presence of the jury, as to whether Gill should be permitted to testify.

Over the defendant's objection, the court permitted Gill to testify that he had received the narcotics from the toxicology laboratory and delivered them to the prosecuting attorney, assistant state's attorney Russell C. Zentner. Shortly thereafter, it was revealed that the narcotics did not remain at the state's attorney's office at all times during the six weeks prior to trial, but that Zentner occasionally had brought them to his home. The defendant requested that he be allowed to examine Zentner as a witness regarding his custody and possible mishandling of the evidence. The court denied the request on the ground that there was no compelling

---

[3] The defendant requested sequestration of witnesses by oral motion after jury selection and prior to trial. The prosecution did not object, and the court granted the motion such that the sequestration was applicable equally to the state and to the defendant.

need to warrant calling the prosecuting attorney to testify.

The court subsequently admitted the narcotics into evidence, and the jury returned a guilty verdict on all three counts. On August 29, 1997, the court sentenced the defendant to a total term of eleven years imprisonment. This appeal followed.

I

The defendant first claims that the court violated the sequestration order when it allowed Gill to testify as to chain of custody because Gill had heard all previous testimony while seated at the prosecution table, thereby depriving the defendant of a fair trial. We disagree.

For the defendant to prevail on his claim, he must show that (1) the court violated a sequestration order and (2) he was prejudiced by the violation. See *State* v. *Robinson*, 230 Conn. 591, 599, 646 A.2d 118 (1994). "A violation of a sequestration order does not automatically require a new trial. . . . The controlling consideration is whether the defendant has been prejudiced by the violation. . . . If the prejudice resulting from the violation is likely to have affected the jury's verdict, a new trial must be ordered." (Citations omitted.) Id.; *State* v. *Brown*, 187 Conn. 602, 611, 447 A.2d 734 (1982). "The burden is on the defendant to show prejudice in the trial court's failure to observe its sequestration order . . . ." *State* v. *Stovall*, 199 Conn. 62, 69, 505 A.2d 708 (1986); see *State* v. *Robinson*, supra, 599. Thus, the defendant bears the burden of demonstrating that "it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Nguyen*, 52 Conn. App. 85, 93, 726 A.2d 119 (1999), aff'd, 253 Conn. 639, 756 A.2d 833 (2000).

The state concedes, and we agree, that the court violated its sequestration order when it allowed Gill to

testify. Therefore, we must consider whether the court's violation was "probably harmful to the defendant." *State* v. *Stovall*, supra, 199 Conn. 68.

"Not all testimony that is tainted by a violation of a sequestration order is necessarily prejudicial. Rather, [a]n inquiry into the facts and circumstances of each case is necessary to ascertain whether the purpose of a sequestration order has been thwarted." (Internal quotation marks omitted.) *State* v. *Robinson*, supra, 230 Conn. 600; *State* v. *Scott*, 16 Conn. App. 172, 182, 547 A.2d 77, cert. denied, 209 Conn. 821, 551 A.2d 758 (1988).

"The primary purpose of a sequestration order is to ensure that the defendant receives a fair trial by preventing witnesses from shaping their testimony to corroborate falsely the testimony of others." (Internal quotation marks omitted.) *State* v. *Nguyen*, supra, 52 Conn. App. 90; see also *State* v. *Stovall*, supra, 199 Conn. 67–68. It is not limited to corroborative evidence, but also includes contradictory and tailored testimony. *State* v. *Robinson*, supra, 230 Conn. 600. "Sequestration orders assure that witnesses will testify solely on the basis of their personal knowledge." *State* v. *Brown*, 56 Conn. App. 26, 32, 741 A.2d 321 (1999), cert. denied, 252 Conn 927, 746 A.2d 790 (2000). "In essence, it helps to ensure that the trial is fair." *State* v. *Robinson*, supra, 600.

Therefore, we must determine whether Gill's testimony was in any way tailored to the testimony he heard and, second, if it was tailored, whether Gill's testimony was likely to have affected the jury's verdict. Id., 601.

The defendant argues that Gill was likely to tailor his testimony to meet the state's burden of establishing chain of custody since he saw firsthand the state's difficulty in admitting the narcotics into evidence and was aware of which gaps in the chain of custody time line needed to be accounted for. We are not persuaded.

There is no presumption that a witness who desires a particular result because of his role in the prosecution's investigation will shape his testimony in favor of the prosecution's case. See *State* v. *DiBella*, 157 Conn. 330, 342, 254 A.2d 477 (1968) (finding no presumption of complicity by two police officers who "conducted practically the entire investigation and desire[d] a successful result"). Likewise, we are not convinced that by virtue of Gill's awareness of the state's need to account for the evidence on certain dates, he would be likely to alter his testimony. He was no more likely to alter his testimony than any other witness who is aware that his testimony involves a crucial matter. Therefore, it is necessary for us to examine Gill's testimony for evidence that he "fabricated his testimony to comport with" that of the preceding witnesses. *State* v. *Scott*, supra, 16 Conn. App. 183.

Gill testified that on June 9, 1997, he went to the state toxicology laboratory at Zentner's request, whereupon he received evidence that he identified as the state's exhibits. He testified that, after signing two dated receipts for the evidence, he brought the evidence to the state's attorney's office and gave it to Zentner. He further testified that the evidence was in the same condition at trial as it was when he first received it. No previous witness testified that Gill had received the evidence or transported it to Zentner. Milzoff previously had testified that the evidence was last at the toxicology laboratory on June 9, 1997. Therefore, Gill knew that the date from which it was necessary to account for the evidence was June 9, 1997. Gill also testified that it was his signature on two receipts in evidence, each of which identified the case, the item of evidence and the date on which he received the items.

The only testimony that could have been tailored involves the date on which Gill stated that he received the evidence because that date is consistent with Mil-

zoff's testimony. We cannot conclude that this consistency is attributable to Gill's tailoring of his testimony. It is too technical to impact the credibility of his testimony. See id. (no evidence of complicity where substance of two state troopers' testimony was different and similarities could be attributed to standard police operating procedures); *State* v. *Sullivan*, 11 Conn. App. 80, 85, 525 A.2d 1353 (1987) (consistencies in mother's, daughter's testimony "wholly explainable by reference to factors other than the order of their testimony"). Rather, the consistency is likely attributable to Gill's own recollection as supported by the two receipts he signed. Moreover, cross-examination of Gill failed to call into question any consistencies between his testimony and the other witnesses' testimony that might be attributable to the fact that he already had heard their chain of custody testimony. See *State* v. *Scott*, supra, 16 Conn. App. 183, quoting *State* v. *Sullivan*, supra, 86 (" '[t]he failure of trial counsel to attempt . . . to show any harm that may have flowed from the violation of the sequestration order is strong evidence that he did not deem it to be prejudicial' ").

Even if we assume arguendo that it was probable that the testimony that Gill already heard and his knowledge of the state's case tainted his testimony, we conclude that the defendant has not met his burden of showing prejudice. Even if Gill were not allowed to testify, the court could still, in its discretion, admit the narcotics evidence. See *State* v. *Barnes*, 47 Conn. App. 590, 595, 706 A.2d 1000 (1998) ("[a]ppellate courts grant great deference to a trial court's ruling on the admissibility of evidence . . . and will not disturb such rulings absent a clear abuse of the trial court's discretion" [citation omitted]).

Moreover, the court in this case gave a curative instruction to the jury before and after Gill's testimony.[4]

[1] Before Gill testified, the court instructed the jury as follows: "There is a sequestration order. But apparently, the state didn't—which means a

It is well established that "[i]f curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided." (Internal quotation marks omitted.) *State* v. *Wooten,* 227 Conn. 677, 694, 631 A.2d 271 (1993). "Our appellate courts have always given great weight to curative instructions in assessing claimed errors . . . especially in assessing a defendant's claim of prejudice." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown,* supra, 56 Conn. App. 29–30.

The defendant relies on *State* v. *Robinson,* supra, 230 Conn. 591, to support his contention that it is probable that an inspector, seated at the prosecution table throughout trial and knowing that certain facts were "crucial" for the state to establish chain of custody, would tailor his testimony to that of the other witnesses. We find *Robinson* distinguishable on its facts.

In *Robinson,* our Supreme Court found it probable that a correction officer who was present during the defendant's trial tailored his testimony regarding the defendant's alleged assault of another correction officer. Id., 601–602. In that case, however, the officer gave directly contradictory testimony after hearing the defendant's witnesses and, being a fellow officer of the victim, had a motive to shape his testimony. Id., 601–603. In this case, there is no such motive to fabricate and,

---

witness or a potential witness cannot be in a courtroom when another witness testifies. But the state wasn't aware until recently, based on my rulings, that they'd be calling inspector Gill. And I have exempted him— for reasons I don't need to advise you of—but I have exempted him from the sequestration order, and I am allowing him to testify in that limited area. Go ahead."

Immediately after Gill testified, the jury was instructed: "Ladies and gentlemen, as a courtesy to the state, I have let them put on Mr. Gill. By my doing that, I don't want to give any more weight to his credibility. You have to determine if he's credible like you would anyone else. So, because I have extended that courtesy, I don't want you to think I was trying to indicate you give it any more weight than anybody else. You treat him like any other witness, no matter who they are. Okay."

as discussed, there is nothing to suggest that Gill modified his testimony.

The court in *Robinson* also concluded that, because there was no pretrial testimony with which to rebut the correction officer's testimony, jury instructions, cross-examination and closing arguments could not obviate the harmful effects of the witness' tainted testimony. Id., 603. Although Gill did not testify before trial in this case, we conclude that the evidentiary foundation that pretrial testimony would have provided for rebuttal would have been unavailing to the defendant because the accuracy of Gill's testimony can be gauged and supported by signed and dated evidence receipts.

We determine that the defendant has failed to show that Gill's exposure to prior testimony or his knowledge of the state's case tainted his testimony and resulted in prejudice to the defendant.

II

The defendant next claims that the court improperly denied his request to question Zentner regarding his custody of the evidence, thereby depriving the defendant of his constitutional right to an adequate defense. We disagree.

The following additional facts are necessary to address this claim. In an off-the-record conversation with defense counsel, Zentner revealed that during the period in which he retained custody of the evidence, he took it to his home. The parties then brought the matter to the attention of the court. Zentner indicated, in chambers and later on the record, that he brought the evidence home on one or two occasions to examine the sticker affixed to its packaging to prepare for trial.

The defendant insisted that Zentner be called as a witness. The court found, however, that the defendant failed to establish, as required by the compelling need

test, that the information sought from the prosecutor was necessary. Rather, the court found that the chain of custody of the narcotics was established without the testimony of Zentner and that, absent any claim that the evidence was tampered with during his custody of it, there would be no reason to question him. We agree with the court.

Connecticut courts have applied the compelling need test to determine whether a prosecuting attorney can be called as a witness in a case in which he participates as an advocate. *State* v. *Mathis*, 59 Conn. App. 416, 423, 757 A.2d 55, cert. denied, 254 Conn. 941, 761 A.2d 764 (2000); *State* v. *Colton*, 234 Conn. 683, 701–702, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996); *State* v. *Thompson*, 20 Conn. App. 290, 295–96, 567 A.2d 837 (1989). "The policy behind the compelling need test in the context of requiring a prosecutor to testify is four fold: First, there is the risk that the prosecutor may not be a fully objective witness. . . . Second, there exists the justifiable fear that, when a prosecutor takes the witness stand, the prestige or prominence of the prosecutor's office will artificially enhance his credibility as a witness. . . . Third, the jury may understandably be confused by the prosecutor's dual role. . . . Finally, a broader concern for public confidence in the administration of justice suggests the maxim that justice must satisfy the appearance of justice." (Citations omitted; internal quotation marks omitted.) *State* v. *Colton*, supra, 701.

"Under this [compelling need] test, the party wishing to call a prosecutor to testify must show that the testimony of the prosecutor is necessary and not merely relevant, and that all other available sources of comparably probative evidence have been exhausted. . . . Because the decision whether to allow an attorney to be called is within the discretion of the trial court, appellate courts will reverse trial court decisions only

when there has been an abuse of discretion. . . . The issue is only whether the trial court acted reasonably." (Internal quotation marks omitted.) *State* v. *Mathis*, supra, 59 Conn. App. 423–24. In determining whether the court abused its discretion, we must make every reasonable presumption in favor of its action. *State* v. *Meikle*, 60 Conn. App. 802, 817, 761 A.2d 247 (2000).

The court determined that with the testimony of Gill, the state sufficiently accounted for the evidence up until July 14, 1997. "Appellate courts grant great deference to a trial court's ruling on the admissibility of evidence . . . and will not disturb such rulings absent a clear abuse of the trial court's discretion. . . . As a general rule, it may be said that the prosecution is not required or compelled to prove each and every circumstance in the chain of custody beyond a reasonable doubt . . . . It is not necessary for every person who handled the item to testify in order to establish the chain of custody. It is sufficient if the chain of custody is established with reasonable certainty to eliminate the likelihood of mistake or alteration." (Citations omitted; internal quotation marks omitted.) *State* v. *Barnes*, supra, 47 Conn. App. 595. "The state's burden with respect to chain of custody is met by a showing that there is a 'reasonable probability' that the substance has not been changed in important respects. . . . 'The court must consider the nature of the article, the circumstances surrounding its preservation and custody and the likelihood of intermeddlers tampering with it . . . .' " *State* v. *Nieves*, 186 Conn. 26, 31 n.4, 438 A.2d 1183 (1982). Thus, this court has found sufficient evidence to establish an adequate chain of custody where there is testimony that evidence was transferred between law enforcement personnel, delivered and received by the state toxicology laboratory and was identified at trial as the same evidence in an unchanged condition with no indication of tampering. *State* v. *Barnes*, supra, 595,

citing *State* v. *Taylor*, 37 Conn. App. 464, 480–82, 657 A.2d 659, cert. denied, 234 Conn. 907, 660 A.2d 859 (1995); see also *State* v. *Johnson*, 162 Conn. 215, 229–33, 292 A.2d 903 (1972); *State* v. *Burns*, 23 Conn. App. 602, 615, 583 A.2d 1296 (1990).

In this case, the court reasonably could have found that the state established the requisite chain of custody without Zentner's testimony. Gill testified that the evidence was in the same sealed condition at trial as it was when it was in his custody. From that testimony, the court was able to infer that the evidence was not tampered with from the time it left Gill's possession to the time it appeared in court.

The court also questioned Zentner, on the record but outside the presence of the jury, regarding his custody of the evidence to the court's satisfaction that the evidence had not been compromised. The court further examined the evidence, again outside the presence of the jury, and determined that the tape affixed by the state toxicology laboratory to reseal the package, as testified about by Milzoff, was intact and showed no signs of tampering. Absent "an affirmative showing that the evidence was in some way tampered with, misplaced, mislabeled or otherwise mishandled"; *State* v. *Barnes*, supra, 47 Conn. App. 597; we conclude that the court could properly have admitted the evidence without the testimony of Zentner. Therefore, the court's conclusion that the defendant did not establish a compelling need to question Zentner does not constitute an abuse of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.