STATE OF CONNECTICUT *v.* GREGORY MATHIS
(AC 19148)

Schaller, Spear and Zarella, Js.

---

Argued May 2—officially released August 15, 2000

*Del Atwell,* special public defender, for the appellant (defendant).

*Robin S. Schwartz,* special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Rachel M. Baird,* deputy assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Gregory Mathis, appeals from the judgment of conviction, rendered after a jury trial, of one count of possession of narcotics in violation

of General Statutes § 21a-279 (a) and one count of possession of narcotics within 1500 feet of an elementary school in violation of General Statutes § 21a-279 (d). The defendant was sentenced to a total effective term of seven years incarceration, suspended after five years, with three years of probation. On appeal, the defendant claims that (1) the evidence was insufficient to sustain the verdict, (2) the trial court improperly granted a motion to quash the defendant's subpoena to have a deputy assistant state's attorney testify on his behalf, (3) the court abused its discretion in imposing an unduly harsh or excessive sentence and (4) the court improperly allowed the state to comment on evidence during closing argument. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On February 18, 1996, Sergeant Steven Hauser of the Hartford police department was approached by a man who reported that he had been the victim of a robbery and assault at an apartment in Hartford. The police immediately investigated the site of the alleged incident at 34 Wethersfield Avenue. Upon arriving, the police officers observed ten people in the apartment, four of whom matched the victim's description of the assailant. The officers also observed seven blue, heat sealed packets containing a white powdery substance.

The officers then took the four individuals downstairs to a police car on the street, where the victim identified the defendant as one of the men who had assaulted him. The defendant and several other individuals then were placed under arrest. The defendant was searched incident to his arrest. The arresting officer, Sandy Kimbrough, reported that the defendant was in possession of "one blue, heat sealed wrapper containing a white powder substance, suspected [to be] heroin." Tests subsequently confirmed that the substance was heroin.

## I

Prior to addressing the larger issue of the sufficiency of evidence, we first must address whether the court abused its discretion in allowing state's exhibit nine into evidence.[1] The defendant claims that the state failed to establish a proper and sufficient chain of custody from Kimbrough to the toxicology lab and to trial. We disagree.

Kimbrough testified that after the victim identified the defendant as one of the men who had robbed him, Kimbrough arrested the defendant and searched him incident to the arrest. Kimbrough testified that as a result of the search, he "found a blue packet of what appeared to be narcotics" in the defendant's pocket and placed it in a "clear plastic evidence bag with a seal." Kimbrough labeled the bag with the investigating officers' names, Officer Achilles Rethis and Officer Charles Cochran, and then turned it over to Rethis.

The defendant claims that names of the investigating officers on the evidence bag containing the seized drugs rather than that of Kimbrough cast sufficient doubt on the chain of custody such that the court should not have admitted the bag into evidence. We find this claim to be wholly without merit.

At trial, Kimbrough identified state's exhibit nine as the blue packet that he believed to contain narcotics. His testimony indicated that he recognized this packet to be the evidence that he seized from the defendant incident to his arrest on February 18, 1996. The officer also indicated that he recalled this same packet because he had seized it, sealed it, labeled the bag and submitted it to the police evidence room. Furthermore, he recognized his handwriting on the bag, which he had labeled

---

[1] State's exhibit nine was the blue, heat sealed packet containing a white substance that was seized from the defendant.

with the names of Rethis and Cochran, the officers directing the investigation. Kimbrough also identified state's exhibit nine as the narcotics he seized. Joel Milzoff, an expert in toxicology at the state toxicology laboratory, also identified state's exhibit nine and testified that he had received the sealed packet for testing at the laboratory. He further testified that he was able to identify the packet by the laboratory number, which was on the inside and outside of the packet. Milzoff testified that he prepared a report in connection with his tests of the contents of state's exhibit nine[2] and concluded that the packet contained twenty-five milligrams of heroin.

When reviewing a court's ruling on the admissibility of evidence, great deference is granted to the court's ruling, absent a clear abuse of discretion. *State* v. *Barnes*, 47 Conn. App. 590, 595, 706 A.2d 1000 (1998). "[O]ur review of a trial court's evidentiary ruling is limited. Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In considering whether the trial court abused its discretion, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness." (Internal quotation marks omitted.) *State* v. *Correa*, 57 Conn. App. 98, 107, 748 A.2d 307, cert. denied, 253 Conn. 908, 753 A.2d 941 (2000). On the basis of our review of the record, we conclude that the testimony and evidence presented at trial was sufficient to establish an adequate chain of custody. Since no claim was made that the evidence had been tampered with in any way, the evidence was properly admitted.

Having determined that the evidence was properly admitted, we now turn to the defendant's claim that

---

[2] The report was identified as state's exhibit ten and subsequently was admitted into evidence as a full exhibit.

the evidence was not sufficient to sustain the verdict. "The test for determining whether the evidence is sufficient to sustain a verdict is thus whether the [trier of fact] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." (Internal quotation marks omitted.) Id., 110.

Contrary to the defendant's claims, the state asserts that there is a reasonable view of the evidence that supports the jury's guilty verdict. The jury heard testimony from Kimbrough that he arrested the defendant and found him in possession of the blue packet that later was introduced as state's exhibit nine. The jury also heard testimony from Kimbrough that the evidence bag was sealed and submitted to the evidence room. Milzoff also testified that state's exhibit nine had been submitted to his laboratory and that the contents tested positive for heroin. The state also offered testimony from a land surveyor that a private school, St. Cyril and St. Methodius School, is within 1500 feet of the site where the drugs were seized from the defendant.

The role of a reviewing court is not to determine if there is evidence that would support a defendant's hypothesis of innocence. *State* v. *Sivri*, 231 Conn. 115, 134, 646 A.2d 169 (1994). Instead, the court asks whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. Id. On the basis of our review of the evidence, we conclude that the jury reasonably could have found the defendant guilty of possession of narcotics and possession of narcotics within 1500 feet of a school.

II

The defendant's second claim is that the court improperly granted the state's motion to quash his sub-

poena to have a deputy assistant state's attorney testify on his behalf.[3] The defendant proposed to elicit testimony as to what, if any, exculpatory information had been obtained that led the state's attorney to enter a nolle of the charges that had been lodged against one of the other individuals who was arrested with the defendant in connection with the incident at issue.

On September 11, 1996, the defendant caused a subpoena to be served on Herman Woodard, the deputy assistant state's attorney. On September 12, 1996, the state filed a motion to quash and a motion in limine, requesting that the court prohibit the defendant from introducing evidence regarding the disposition of the charges against the other individual in connection with the incident at issue. The court granted the state's motions at a hearing on September 12, 1996.

The defendant claims that because he and the other individual were arrested in connection with the same incident, any information that exculpated that individual could exculpate him by association. The state responds by arguing that prosecutors are entitled to exercise discretion in disposing of cases. The state argues further that there would have to be a compelling need to require Woodard to testify because the other individual's case was not relevant to exculpate the defendant. In addition, the state claims that it had no exculpatory information outside of the information that it already had provided to the defense. It also claims that any evidence about the other individual's case

---

[3] The court did not articulate on the record its reasons for granting the motion to quash. Our Supreme Court has directed that where the factual or legal basis of a trial court's decision is unclear, the appellant should file a motion for articulation. In the absence of such action, the reviewing court should presume that the trial court considered all of the facts before it and applied the correct legal standard. *Walton* v. *New Hartford*, 223 Conn. 155, 164–65, 612 A.2d 1153 (1992); *State* v. *Prutting*, 40 Conn. App. 151, 162, 669 A.2d 1228, cert. denied, 236 Conn. 922, 674 A.2d 1328 (1996).

would have served only to confuse and prejudice the jury. Finally, the state argues that the defendant was charged with several counts of robbery and possession of narcotics, none of which contained an element relating to the guilt or innocence of any other individual.

Connecticut courts have applied the compelling need test where there is a risk that a prosecutor may be called as a witness. *State* v. *Thompson*, 20 Conn. App. 290, 296, 567 A.2d 837 (1989). "First, there is the risk that the prosecutor may not be a fully objective witness. Second, there exists the justifiable fear that, when a prosecutor takes the witness stand, the prestige or prominence of the prosecutor's office will artificially enhance his credibility as a witness. . . . Third, the jury may understandably be confused by the prosecutor's dual role. . . . The jury would be required to segregate the factual testimonial account of the prosecutor-witness from the exhortations of the prosecutor-advocate. . . . Naturally, the potential for jury confusion is perhaps at its height during final argument when the prosecutor must marshall all the evidence, including his own testimony, cast it in a favorable light, and then urge the jury to accept the government's claims. . . . Finally, a broader concern for public confidence in the administration of justice suggests the maxim that justice must satisfy the appearance of justice. Public confidence in our criminal justice system may be eroded by even the appearance of impropriety." (Citations omitted; internal quotation marks omitted.) Id.

"Permitting a defendant to call his prosecuting attorney as a witness, 'therefore, inevitably confuses the distinctions between advocate and witness, argument and testimony, [and] is acceptable only if required by compelling and legitimate need.' " Id.

"Under this [compelling need] test, the party wishing to call a prosecutor to testify must show that the testi-

mony of the prosecutor is 'necessary and not merely relevant,' and that all other available sources of comparably probative evidence have been exhausted." *Ullmann* v. *State*, 230 Conn. 698, 717, 647 A.2d 324 (1994). Because the decision whether to allow an attorney to be called is within the discretion of the trial court, appellate courts will reverse trial court decisions only when there has been an abuse of discretion. Id. The issue is only whether the trial court acted reasonably. Id. "Any improper evidence that may have a tendency to excite the passions, awaken sympathy, or improperly influence the judgment of the jury cannot be considered." *State* v. *Loughlin*, 149 Conn. 21, 26, 175 A.2d 367 (1961).

In this case, any evidence concerning the other individual's case could have improperly influenced the jury. Furthermore, the defendant failed to establish, as required by the compelling need test, that the information sought from Woodard was information that was not available from any other source. See *State* v. *Colton*, 234 Conn. 683, 701, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996); *Ullmann* v. *State*, supra, 230 Conn. 717; *State* v. *Thompson*, supra, 20 Conn. App. 296. Because the defendant failed to show that all other available sources of comparably probative evidence were exhausted, the court did not abuse its discretion in finding that the compelling need test had not been met.

Finally, there was no evidence that exculpatory evidence was being withheld by the state. If evidence of the nolle of the charges against the other individual had come before the jury, the state would have been compelled to defend its decision to nolle those charges and explain why the defendant's case was treated differently. Because the information sought from Woodard was not relevant and because there was no exculpatory information to be had, the court acted well within its

discretion in granting the state's motion to quash the defendant's subpoena.

## III

The defendant claims that the court abused its discretion in imposing an unduly harsh or excessive sentence.

"It is well established that when the sentence imposed is within the limits fixed by statute for the offenses charged, an appellate claim that the sentence is excessive is nothing more than an appeal for clemency and a request that this court exercise discretionary authority it does not possess. . . . [Our Supreme Court has] stated that we have no discretionary power to modify or overturn a sentence that was within the limits fixed by statute for the offense charged, except where a trial court appears to have abused its discretion." (Citations omitted.) *State* v. *Baldwin,* 224 Conn. 347, 370–71, 618 A.2d 513 (1993). Our review of the record discloses that the court properly sentenced the defendant within the limits set by statute. The defendant's claims are not reviewable here. A petition for sentence review is the appropriate means by which to evaluate this claim.[4] Id.

[1] General Statutes § 51-195 provides, "Application for review of sentence. Any person sentenced on one or more counts of an information to a term of imprisonment for which the total sentence of all such counts amounts to confinement for three years or more, may, within thirty days from the date such sentence was imposed or if the offender received a suspended sentence with a maximum confinement of three years or more, within thirty days of revocation of such suspended sentence, except in any case in which a different sentence could not have been imposed or in any case in which the sentence or commitment imposed resulted from the court's acceptance of a plea agreement or in any case in which the sentence imposed was for a lesser term than was proposed in a plea agreement, file with the clerk of the court for the judicial district in which the judgment was rendered an application for review of the sentence by the review division. Upon imposition of sentence or at the time of revocation of such suspended sentence, the clerk shall give written notice to the person sentenced of his right to make such a request. Such notice shall include a statement that review of the sentence may result in decrease or increase of the term within the limits fixed by law. A form for making such application shall accompany the notice.

IV

The defendant's final claim is that the court improperly allowed the state to comment on evidence during closing argument. This claim is raised for the first time on appeal. "Our review of this claim, therefore, is limited to either plain error review; see Practice Book § [60-5]; or review pursuant to the constitutional bypass doctrine of *Evans-Golding*. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973). The defendant fails, however, to request review of this claim under either of these doctrines. As this court has previously noted, it is not appropriate to engage in a level of review that is not requested. . . ." (Citation omitted.) *State* v. *Hermann*, 38 Conn. App. 56, 64–65, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995). Accordingly, we decline to review this unpreserved claim.

The judgment is affirmed.

In this opinion the other judges concurred.

The clerk shall forthwith transmit such application to the review division and shall notify the judge who imposed the sentence. Such judge may transmit to the review division a statement of his reasons for imposing the sentence, and shall transmit such a statement within seven days if requested to do so by the review division. The filing of an application for review shall not stay the execution of the sentence."

