******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DISCIPLINARY COUNSEL *v.* LAURENCE PARNOFF
(AC 36319)

Beach, Prescott and Bear, Js.

*Argued March 4—officially released July 7, 2015*

(Appeal from Superior Court, judicial district of
Fairfield, Bellis, J.)

*Suzanne B. Sutton*, first assistant chief disciplinary
counsel, with whom were *Beth L. Baldwin*, assistant
disciplinary counsel, and, on the brief, *Patricia A. King*,
chief disciplinary counsel, for the appellant (plaintiff).

*Paul E. Pollock*, for the appellee (defendant).

*Opinion*

PRESCOTT, J. In this attorney presentment proceeding brought pursuant to Practice Book § 2-47, the plaintiff, Disciplinary Counsel, appeals from the judgment of the trial court reprimanding the defendant, Laurence Parnoff, for violating rule 1.15 (f) of the Rules of Professional Conduct. Disciplinary Counsel claims that the court (1) applied an incorrect legal standard in determining that the defendant had not knowingly misappropriated his client's funds and, thus, was not subject to mandatory disbarment in accordance with Practice Book § 2-47A; (2) made several clearly erroneous factual findings; and (3) abused its discretion by deciding not to impose sanctions beyond a reprimand. We affirm the judgment of the trial court.

This disciplinary proceeding arises out of a long-standing dispute over attorney's fees between the defendant, his former client, Darcy Yuille, and Attorney Laura Mooney. The fee dispute has spawned several civil actions and prior appeals to this court. See *Parnoff* v. *Yuille*, 139 Conn. App. 147, 57 A.3d 349 (2012), cert. denied, 307 Conn. 956, 59 A.3d 1192 (2013); *Parnoff* v. *Mooney*, 132 Conn. App. 512, 35 A.3d 283 (2011).

The following procedural history is relevant to the present appeal. On April 23, 2011, Yuille filed a grievance against the defendant alleging that he had violated the Rules of Professional Conduct by improperly taking funds from an escrow account that had been established to safeguard money recovered by Yuille in a civil action until the parties' fee dispute finally could be resolved.[1]

The Fairfield Judicial District Grievance Panel determined that there was probable cause to believe that the defendant had violated the Rules of Professional Conduct. Subsequently, following several days of hearings, a reviewing committee of the Statewide Grievance Committee found by clear and convincing evidence that the defendant had violated rule 1.15 (f) of the Rules of Professional Conduct, which provides in relevant part: "When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claims interests, the property shall be kept separate by the lawyer until the dispute is resolved." The reviewing committee directed Disciplinary Counsel to file a presentment with the Superior Court. Disciplinary Counsel filed the presentment on December 7, 2012.

Following three days of trial, the court rendered the decision that is the subject of the present appeal. In its September 19, 2013 memorandum of decision, the court set forth the following factual findings, which provide a detailed account of the parties' fee dispute:

"[Yuille] had been employed by Bridgeport Hospital as a nurse prior to her termination following a 1994 work-related injury. On December 5, 1998, she signed

a contingent fee agreement with Laurence V. Parnoff, P.C. The agreement, which authorized [the defendant] to prosecute a bad faith claim handling of the workers' compensation claim and listed Bridgeport Hospital as the defendant, essentially set forth a 40 percent contingency fee arrangement. Yuille did not retain a copy of the agreement and has no recollection of having read it.

"[The defendant] filed suit against Bridgeport Hospital, and thereafter, the parties agreed to go to binding arbitration. Subsequent to that agreement but before the final arbitration award, [Mooney], who represented Yuille in the underlying workers' compensation claim, filed an appearance in the Bridgeport Hospital lawsuit filed by [the defendant]. Over the objection of [the hospital's] counsel, Mooney appeared at the 2004 arbitration hearing, although she was not permitted to participate. The hearing resulted in an arbitration award in favor of Yuille of approximately $1.1 million.

"[The defendant] first learned that Yuille was questioning [their] fee agreement after the arbitration award. Mooney wrote the arbitrators, asking them to open [the award]. Additionally, Attorney William F. Gallagher of the Gallagher Law Firm wrote [to the defendant], requesting that part of the fee from the arbitration award be allocated to Mooney. Finally, Yuille e-mailed defense counsel to the arbitration, instructing them to add Mooney as a payee on all checks related to the arbitration award.

"The relationship between [the defendant] and Yuille began to deteriorate to the point where their communications were reduced to writing. While Yuille had suspected at some point prior to the arbitration that her agreement with [the defendant] called for a 40 percent contingency fee, her suspicions were confirmed when she received the settlement statement from [the defendant]. By letter dated August 18, 2004, and again by e-mail on August 24, 2004, [the defendant] told Yuille to write in and initial the fee amount that she agreed [the defendant] should be paid and to return the signed settlement statement and that he would hold the disputed amount in escrow.

"On August 30, 2004, Yuille signed the statement, crossing out the $438,413.17 in attorney's fees listed in the statement, and authorizing [the defendant] to take $125,000 toward his legal fee and escrow the remaining balance until the fee dispute was resolved. Yuille made clear at that time her position that not only was the 40 percent fee excessive, but that Mooney should share in the fee. Yuille reiterated, in subsequent e-mails to [the defendant], her instructions that the arbitration check should be made payable to [the defendant], Mooney, and Yuille, and that the remaining attorney's fee, exclusive of the $125,000 payment she had authorized to [the defendant], was to be escrowed. [The defendant] received the arbitration award checks on October 18,

2004; by letter on that same date, [the defendant] confirmed to Yuille that he would escrow the disputed fee.

"On August 27, 2004, [the defendant] filed a lawsuit naming Mooney as a defendant, claiming that Mooney had interfered with his handling of the lawsuit he had filed on behalf of Yuille against Bridgeport Hospital. On October 6, 2004, Mooney filed a motion to compel [the defendant] to disburse the settlement proceeds and escrow the disputed fee. In the motion, Mooney represented that she and Yuille took the position that the fee was illegal and excessive, and additionally, Mooney claimed that she was entitled to a portion of the fee. At the November 16, 2004 hearing on the motion to compel, Gallagher, who appeared on behalf of Mooney, asked that the court order that the disputed balance be escrowed. Yuille took the position that [the defendant] was authorized to take only the $125,000, as she thought his fee was excessive. The court, *Gilardi, J.*, requested that Gallagher, on behalf of Yuille, file an appearance, motion to intervene, and intervening complaint. [The defendant's] counsel, Attorney Thomas J. Weihing, represented that the funds would be escrowed, and Yuille believed that [the defendant] would escrow the funds, based on the comments of his counsel at the hearing as well as the prior communications with [the defendant].

"On November 16, 2004, following the court proceeding, an agreement was reached based on the anticipated court order that the funds would be held in escrow, whereby Yuille signed the settlement check at Weihing's office. Yuille had been reluctant to sign the check without court intervention. That same day, [the defendant] signed a trust account application, prepared by Weihing, with Chase Bank. The account was in the name of Laurence V. Parnoff Trustee for Darcy Yuille, with an initial deposit in the amount of $971,032.93. It was Weihing's belief at the time that the court had directed [the defendant] to hold the funds.

"[The defendant] made various disbursements from the Chase account. By letter dated November 18, 2004, [the defendant] informed Yuille that the arbitration check had been deposited and that 'in accordance with [his] letters to [Yuille] and [Yuille's] previous instructions, [the defendant would] soon be able to make both the long agreed payment to [Yuille] and also keep the agreed amount in escrow' . . . .

"On November 27, 2004, [the defendant] confirmed by letter to Yuille that the balance of the fee, in the amount of $313,413.17, remained in escrow. Although indications were that Yuille was going to file a claim against [the defendant], [he] instead brought an action against Yuille. Returnable March 15, 2005, that complaint, filed by Weihing on behalf of [the defendant], alleged breach of contract, unjust enrichment, and bad faith, and specifically made reference to Yuille's objection to the legal fee in excess of 33 percent. The com-

plaint also alleged that [the defendant] 'was required, by professional integrity, to agree to hold, and has held, in escrow the sum of $313,413.17.' Yuille filed an answer and special defenses dated April 13, 2005; the special defenses alleged that the contract was unenforceable in that it was unconscionable, and that it violated Connecticut's fee cap statute.

"On December 2, 2004, Weihing, on behalf of [the defendant], filed a pleading with the court in the lawsuit he had filed against Mooney, taking the position that the court had not entered any escrow orders, that Yuille and [the defendant] had reached an agreement in August regarding 'deposit, disbursement and escrow' . . . and that Yuille had carried out her part of the agreement by signing the arbitration check on November 16, 2004.

"The 2004 lawsuit filed by [the defendant] against Mooney and the 2005 lawsuit filed by [the defendant] against Yuille were consolidated. As of January 24, 2008, the escrow account balance was $350,850.98. During the pendency of the litigation, Weihing and Attorney Barbara Cox from the Gallagher Law Offices would, with frequency, discuss the escrow issue, with Cox asking Weihing for a copy of the escrow account statement, and Weihing asking Cox for a copy of the escrow agreement. And while Weihing believed that most, if not all, of the litigation would end if Mooney's claim was resolved, and while he was confused as to what Yuille's claim was, Cox did not share in Weihing's belief that Yuille would be satisfied if Mooney was paid.

"The cases went to trial in May, 2010. [The defendant] testified at trial that he had escrowed the fee because of the dispute, as he was ethically bound to do so and because he had represented to Yuille that he would do so. Yuille, when questioned by [the defendant's] counsel, testified that [the defendant] would need to resolve matters with Mooney and that she would then be willing to give [the defendant] his fee; she also testified, when asked if she was at the trial to help Mooney, that she was also trying to get her own fee dispute resolved. On May 20, 2010, the jury rendered a verdict, as follows: in favor of [the defendant] and against Yuille on [the defendant's] breach of contract claims, in favor of Yuille and against [the defendant] on [the defendant's] unjust enrichment claim, in favor of Mooney and against [the defendant] on [the defendant's] tortious interference claim, and in favor of Mooney and against [the defendant] on Mooney's claims of quantum meruit and unjust enrichment.

"[The defendant] held the funds in escrow continuously [until] July 26, 2010, when the Chase Certificate of Deposit containing the funds, then in the amount of $363,960.87, was not renewed. The funds were transferred into [the defendant's] personal savings account.

"Approximately one week after the transfer of funds, [the defendant] filed an appeal, and Yuille cross appealed from the verdict. On or about January 4, 2011, Yuille's counsel filed a motion with the trial court, essentially seeking an accounting from the purported November 16, 2004 court-ordered escrow, and a release of excess funds. At the first appellate pretrial conference, Cox and Weihing had discussions regarding divvying up the escrow funds. At a subsequent appellate pretrial conference, in late March, 2011, Yuille learned for the first time, from her counsel, that [the defendant] was not holding any funds in escrow for her, when Weihing, having then been so informed by [the defendant], made the disclosure. The cases did not settle on appeal, and the Appellate Court issued its decision on November 20, 2012 . . . ." (Emphasis omitted; footnotes omitted.)

On appeal, this court determined, among other things, that because the fee agreement between the defendant and Yuille required payment of fees greater than permitted by the fee cap statute, General Statutes § 52-251c, the agreement was not enforceable because it violated public policy. See *Parnoff* v. *Yuille*, supra, 139 Conn. App. 168–69. As a result, we held that the court improperly allowed the jury to consider the defendant's counts alleging breach of the agreement, and that the jury's award of compensatory and punitive damages as well as its award of prejudgment interest could not stand. Accordingly, we reversed the judgment rendered in favor of the defendant on the breach of contract counts and remanded the matter to the trial court with direction to dismiss those counts of the complaint. The defendant filed a petition for certification to appeal to the Supreme Court, which was denied on January 24, 2013. *Parnoff* v. *Yuille*, 307 Conn. 956, 59 A.3d 1192 (2013). In sum, it remains to be determined on remand what amount, if any, the defendant is entitled to receive in excess of the $125,000 already paid to the defendant by Yuille.

On the basis of its factual findings in this disciplinary hearing, the court determined by clear and convincing evidence that the defendant had violated rule 1.15 (f) by failing to escrow the disputed fees properly, but also determined that the defendant had "engaged in this conduct negligently . . . ." The court found that the defendant had not acted wilfully or with an intent to deceive Yuille. The court rejected the position taken by Disciplinary Counsel, namely, that [the defendant's] actions in violating rule 1.15 (f) amounted to a knowing misappropriation of client funds and that the defendant deserved mandatory disbarment in accordance with Practice Book § 2-47A. At the time the court rendered its decision, Practice Book (2013) § 2-47A provided: "In any disciplinary proceeding where there has been a finding by a judge of the superior court that a lawyer

has knowingly misappropriated a client's funds or other property held in trust the discipline for such conduct shall be disbarment."[2]

In deciding the appropriate disciplinary sanctions to impose, the court considered several mitigating factors, including that the defendant had had a clean disciplinary record for forty-three years, that he had cooperated throughout the disciplinary proceedings, that he had properly held the disputed funds in escrow for approximately nine years, and that he had since restored what remained of the disputed funds to a new escrow account. The court also considered the following aggravating factors: that the defendant had violated an important fiduciary duty, that he had displayed a lack of candor and openness about when the disputed funds were transferred out of escrow and into his personal account, and that Yuille had been harmed by the defendant's misconduct. Ultimately, the court decided to issue a formal reprimand against the defendant. It further ordered him to keep all remaining disputed funds in escrow pending further orders from the court and to provide periodic accountings of the escrow account to Disciplinary Counsel upon request.

Disciplinary Counsel filed a motion seeking reargument, reconsideration and clarification of the court's decision. In that motion, Disciplinary Counsel asked the court to clarify the amount of money that the defendant currently was supposed to be holding in escrow and to reconsider its findings regarding the mitigating circumstances identified by the court. She also argued that a reprimand was an inadequate sanction under the facts of this case. The court granted the motion only to the extent that Disciplinary Counsel sought clarification of its decision, and articulated as follows: that on the basis of the parties' agreement reported at the July 15, 2011 hearing; see footnote 1 of this opinion; there was $71,703.22 remaining of the disputed funds, and this was the amount it ordered to remain in escrow; that instead of stating that the defendant had held the disputed funds in escrow for nine years, it instead should have referred to a "nearly nine year time frame"; and that it "clearly made factual findings with respect to the dates involved, the fact that the [certificate of deposit] was not renewed and the funds were transferred into [the defendant's] personal account, and the fact that the funds had been restored to escrow."

The court also clarified with respect to the July 15, 2011 hearing, that it "declined to consider the events of [July 15, 2011] as an aggravating factor. At the [July 15, 2011] hearing, Disciplinary Counsel indicated that when she filed the complaint in the 2011 action, there were no funds remaining in the escrow account. Disciplinary Counsel further indicated that on the morning of the [July 15, 2011] hearing, defense counsel provided her with a computer printout, not on bank letterhead,

showing a balance of $71,703.22. No representation was made by the defendant or by defense counsel that the funds had continuously remained in escrow." This appeal followed.

On December 31, 2013, Disciplinary Counsel filed a motion for articulation asking the trial court to state the factual and legal basis for its findings (1) that the defendant should be required to escrow only $71,703.22, rather than $363,960.87, which Disciplinary Counsel contended was the total amount of the funds misappropriated by the defendant; and (2) that the defendant did not act wilfully, with a lack of integrity, or with any intent to deceive Yuille. The court granted the motion and issued the following articulation: "As to [Disciplinary Counsel's] first request, the court, pursuant to Practice Book § 2-47 (a) and in response to [Disciplinary Counsel's] request, ordered the defendant to escrow funds. The order that the defendant be required to escrow the sum of $71,703.22, as opposed to some other amount, was based on the fact that both [Disciplinary Counsel] and the defendant had previously indicated to the court that that was the amount that should be escrowed. The court therefore determined that that amount would be a reasonable amount to escrow. As stated in its memorandum of decision, the court concluded that it was not up to it to determine the amounts to be disbursed, as the parties remain in litigation, but rather, it was only to address whether there was misconduct and if so, the appropriate discipline. With respect to [Disciplinary Counsel's] second request for articulation, the court set forth in detail, in its memorandum of decision, the protracted, lengthy, very confusing, and tortured history of the fee dispute, and, as stated in its decision, found that the defendant acted unreasonably but not dishonestly, and without an intent to deceive. The court based these findings, and its conclusion that the acts did not reflect any lack of integrity on the part of the defendant, on the detailed facts set forth in its decision." Disciplinary Counsel did not seek review from this court of the trial court's responses to her motion for articulation; see Practice Book § 66-7;[3] nor did she request further articulation from the trial court in accordance with Practice Book § 66-5.[4]

I

Disciplinary Counsel first claims that the court applied an improper standard in determining whether the defendant knowingly misappropriated funds and, thus, was subject to mandatory disbarment under Practice Book § 2-47A. Disciplinary Counsel argues that the court improperly considered whether the defendant had acted intentionally or negligently rather than focusing on whether he had actual knowledge of the facts in question and that, in so doing, the court failed to apply the recognized standard for determining if an attorney has knowingly misappropriated funds. We are not per-

suaded for the following reasons.

First, the language used by the court in its memorandum of decision indicates that the court was aware of and correctly applied the standard contained in Practice Book § 2-47A. Second, although we agree with Disciplinary Counsel's assertion that because Practice Book § 2-47A codifies a rule enunciated by the New Jersey Supreme Court in *In re Wilson*, 81 N.J. 451, 409 A.2d 1153 (1979), New Jersey law is instructive with regard to her claim, our review of the court's decision in the present case reveals nothing that is at odds with either *In re Wilson* or other New Jersey decisions applying the *In re Wilson* rule. Whether the trial court utilized an incorrect legal standard in its application of Practice Book § 2-47A presents a question of law over which we exercise plenary review. See *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 96–97, 801 A.2d 759 (2002).

We begin our discussion of Disciplinary Counsel's claim by acknowledging that no appellate court in this state has had the opportunity to discuss Practice Book § 2-47A or its application. As previously indicated, at the time the court rendered its decision, Practice Book (2013) § 2-47A provided: "In any disciplinary proceeding where there has been a finding by a judge of the superior court that a lawyer has *knowingly* misappropriated a client's funds or other property held in trust the discipline for such conduct shall be disbarment." (Emphasis added.) Throughout this case, Disciplinary Counsel has continually confounded the difference between a general intent to engage in conduct and a specific intent to cause a result or act with knowledge that such a result will occur. Disciplinary Counsel appears to argue that as long as an attorney intentionally engages in conduct, such as spending settlement funds, he necessarily has engaged in a knowing misappropriation, even if he had a reasonable and good faith belief that he was entitled to do so because the funds belonged to him. Under Disciplinary Counsel's contention, such a lawyer, acting in good faith, is subject to mandatory disbarment as long as he "knowingly" engaged in the conduct. Nothing in Practice Book § 2-47A or *In re Wilson* and its progeny suggests such a standard. Instead, we conclude that the "knowing" requirement relates to whether the attorney knows in fact that the property did not belong to him when it was misappropriated.

Neither party argues that the language of the rule is ambiguous, nor do we perceive any ambiguity in the text of the rule. By its plain language, Practice Book § 2-47A provides that disbarment is the only sanction that a court may impose in any disciplinary proceeding in which a judge has made a finding that the lawyer *knowingly* misappropriated his or her client's property. The rule's use of the past tense—"where there *has been* a finding"—indicates that application of the rule

requires some prior determination of a knowing misappropriation. In many respects, the rule is analogous to a mandatory minimum sentencing provision.

In the present case, the disciplinary proceeding before the court involved the defendant's alleged violation of rule 1.15 (f) of our Rules of Professional Conduct. The alleged violation was based on (1) the defendant's failure to continue to safeguard funds that were the subject of the parties' long-standing fee dispute in an escrow account and (2) the commingling of those funds with the defendant's personal funds. The court found by clear and convincing evidence that the defendant had failed to keep the disputed fees in escrow and that he impermissibly allowed those funds to be transferred into his personal bank account. As Disciplinary Counsel aptly notes in her brief, scienter is generally not required to establish a violation of our rules of professional responsibility; see *Daniels* v. *Statewide Grievance Committee*, 72 Conn. App. 203, 211, 804 A.2d 1027 (2002); and the court did not require Disciplinary Counsel to prove as much in concluding that the defendant had violated rule 1.15 (f).

In so ruling, however, the court, in essence, emphasized that the defendant lacked the knowledge that the funds belonged to Yuille. The court explained that the parties' fee dispute had a tortuous and very confusing procedural history, and that the defendant had acted in this case on the basis of an unreasonable belief that he no longer was required to maintain the disputed funds in the escrow account. Put in other terms, the court found that the defendant acted with carelessness rather than with the awareness necessary to find that the defendant violated Practice Book § 2-47A. Having made these findings, the court expressly found that the defendant's conduct "[d]id not give rise to a knowing misappropriation of funds pursuant to Practice Book § 2-47A."

The court did not elaborate on what standard it used in determining that the defendant's misappropriation of Yuille's funds in the present case was not a "knowing" misappropriation. By using the "knowing misappropriation" language and referencing Practice Book § 2-47A, however, the trial court indicated that it understood the proper legal standard that it was required to apply in determining whether mandatory disbarment was an appropriate sanction in the present case.[5] It was on the basis of its express finding that the defendant had *not knowingly* misappropriated funds—a finding that was consistent with its earlier determination that the defendant had allowed the disputed fees to be commingled with his personal funds on the basis of an unreasonable belief that ownership of the funds was no longer in dispute—that the court determined that it was not bound to impose disbarment in accordance with Practice Book § 2-47A. In the absence of some clear indica-

tion to the contrary, we presume that the court applied the correct legal standard in making that finding. See *State* v. *Baker*, 50 Conn. App. 268, 275 n.5, 718 A.2d 450 ("trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied its burden demonstrating the contrary" [internal quotation marks omitted]), cert. denied, 247 Conn. 937, 722 A.2d 1216 (1998); see also *DiBella* v. *Widlitz*, 207 Conn. 194, 203–204, 541 A.2d 91 (1988) ("[a]bsent a record that demonstrates that the trial court's reasoning was in error, we presume that the trial court correctly analyzed the law and the facts in rendering its judgment").

Disciplinary Counsel nevertheless urges us to consider New Jersey law in reviewing whether the court applied the correct standard for a "knowing misappropriation." The 2007 commentary to Practice Book § 2-47A provides in relevant part: "The above rule is a codification of the '*Wilson*' rule. In *In re Wilson*, [supra, 81 N.J. 451], the New Jersey Supreme Court articulated a rule that the universal response in cases of knowing misappropriation of clients' money should, without exception, be disbarment." Given this commentary, we agree that it is appropriate to look to New Jersey case law in considering whether the court applied a correct standard for "knowing misappropriation" under Practice Book § 2-47A.

In *In re Wilson*, the court was asked to determine the proper discipline to impose on an attorney who had "*knowingly* used his clients' money as if it were his own." (Emphasis added.) *In re Wilson*, supra, 81 N.J. 453. Thus, whether the attorney's misappropriation was knowing was undisputed and not an issue considered by the court in *In re Wilson*. That court explained in considerable detail that a misappropriation of client's funds by an attorney is a particularly egregious act of professional misconduct because such an act risks eroding the public's confidence in the integrity and trustworthiness of lawyers. Id., 455–56. The court also discussed the fact that various mitigating factors that courts often considered when crafting disciplinary sanctions in cases of knowing misappropriation rarely, if ever, should be permitted to override the need for disbarment. Id., 457–60. Nevertheless, because in *In re Wilson* it was undisputed that the attorney had acted knowingly in misappropriating his client's funds, the *In re Wilson* decision contains no guidance about the standard a court should utilize in determining whether in any particular case an attorney's misappropriation was knowing. In later applying the *In re Wilson* rule, however, the New Jersey Supreme Court stated that "knowing misappropriation under *Wilson* consists simply of a lawyer taking a client's money entrusted to him, *knowing* that it is the client's money and *knowing* that the client has not authorized the taking." (Emphasis added; internal quotation marks omitted.) *In re Warhaf-*

*tig*, 106 N.J. 529, 533, 524 A.2d 398 (1987).

In *In re Konopka*, 126 N.J. 225, 596 A.2d 733 (1991), the main issue before the New Jersey Supreme Court was whether shortages identified during an audit of trust fund accounts maintained by an attorney for his clients were the result of a knowing misappropriation of funds. Although the court held that the attorney had violated rules of professional conduct governing the safekeeping of client's property and record keeping, it concluded that his actions were the result of inadequate and extremely careless record keeping—in other words, negligence—which did not amount to a knowing misappropriation of funds. In reaching its decision, the court clarified that the *In re Wilson* rule was meant to deter only knowing misappropriations. Id., 234; *In re Gallo*, 117 N.J. 365, 373, 568 A.2d 522 (1989); see also *In re Barlow*, 140 N.J. 191, 196, 657 A.2d 1197 (1995) ("Proof of misappropriation, by itself, is insufficient to trigger the harsh penalty of disbarment. Rather, the evidence must clearly and convincingly prove that respondent misappropriated client funds knowingly.").

Disciplinary Counsel nevertheless argues that the court improperly focused its inquiry on whether the defendant acted with knowledge that the funds belonged to his client, or whether he was simply negligent as to that fact. In so arguing, she relies on *In re Blumenstyk*, 152 N.J. 158, 162, 704 A.2d 1 (1997), *In re Freimark*, 152 N.J. 45, 55, 702 A.2d 1286 (1997), and *In re Noonan*, 102 N.J. 157, 506 A.2d 722 (1986), for the proposition that "[a] lawyer's subjective intent, whether it be to borrow or to steal, is irrelevant to the determination of the appropriate discipline in a misappropriation case." (Internal quotation marks omitted.) In those cases, however, whether the attorney had taken the funds with knowledge that the funds did not belong to the attorney was not at issue. See, e.g., *In re Blumenstyk*, supra, 162 (After noting respondent's reliance on cases imposing more lenient discipline than disbarment, court distinguished those cases, indicating that they rested on determinations "that the misappropriations were negligent, rather than knowing. Clearly, that is not the case here, where respondent admitted that he knowingly misappropriated his clients' funds.").

The cases relied on by Disciplinary Counsel do not hold, as she seems to suggest, that any time a lawyer takes disputed funds, the lawyer's belief as to his rights to those funds is irrelevant. Instead, the cases concern a related but separate question of whether the lawyer is somehow excused if his intent was only to "borrow" the money.

In determining whether a misappropriation of funds was done knowingly in the first instance, however, it is entirely proper for the court to look to whether the attorney's actions were done with actual or constructive knowledge of a lack of ownership or whether he or she

acted with some less culpable state of mind. An attorney who takes a client's fund on the basis of an unreasonable belief that he is entitled to those funds certainly may have negligently or recklessly misappropriated those funds, and may be subject to disciplinary action, but he or she has not necessarily done so "knowingly" so as to trigger the automatic disbarment sanction of Practice Book § 2-47A.

In short, Disciplinary Counsel has failed to convince us that the court applied an incorrect legal standard in determining that the defendant's actions in the present case did not amount to a knowing misappropriation. Accordingly, her claim fails.

II

Disciplinary Counsel next claims that the court made a number of clearly erroneous factual findings. In particular, she claims that the court's finding that the defendant acted negligently was clearly erroneous given that he was fully aware of his ethical obligation regarding the disputed funds and used those funds for his personal benefit. She also claims that, in adjudicating the grievance complaint, the court improperly relied upon the parties' agreement at a July 15, 2011 hearing on the application for interim suspension that $71,302.22 was the amount of the remaining disputed fees, which the court had ordered the defendant to hold in escrow until further ordered. Finally, she claims that the court improperly found as a mitigating factor that the defendant had cooperated with the disciplinary proceedings. We conclude that Disciplinary Counsel misperceives the true nature of the court's decision and that the factual findings challenged by Disciplinary Counsel are supported by evidence in the record as a whole. Accordingly, we reject her claims that the findings are clearly erroneous.

Before addressing each of Disciplinary Counsel's claims in turn, we first reiterate our well settled and highly deferential standard of review. It is axiomatic that "factual findings . . . are subject only to a limited scope of review on appeal." *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 283, 649 A.2d 518 (1994). "A factual finding may not be rejected on appeal merely because the reviewing judges personally disagree with the conclusion or would have found differently had they been sitting as the factfinder." *Kaplan* v. *Kaplan*, 186 Conn. 387, 391, 441 A.2d 629 (1982). "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

committed." (Internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Palmer*, 88 Conn. App. 330, 336, 869 A.2d 666 (2005).

A

Disciplinary Counsel first challenges the trial court's finding that, in failing to keep the disputed funds in escrow, the defendant acted negligently, not wilfully or with any intent to deceive. According to Disciplinary Counsel, the court's finding was clearly erroneous given the defendant's testimony that he understood his ethical obligations regarding disputed funds generally, but nevertheless failed to keep the funds at issue safe, using them for his personal gain. On the basis of our review of the record, we are convinced that there was sufficient evidence before the court to support its conclusion that the defendant acted negligently, or, as the court clarified in its January 22, 2014 articulation, "acted unreasonably but not dishonestly, and without an intent to deceive."

As noted by the court in its memorandum of decision, "[the defendant] testified repeatedly that he believed that [Yuille's] special defenses did not raise a dispute with respect to the fee, and that he was justified in terminating the escrow based on the portion of Yuille's testimony [on May 14, 2010] that she would be satisfied if he resolved his fee dispute with Mooney." The defendant testified a number of times during the trial that he believed that Yuille had waived any challenge she may have had regarding her fee agreement with him and that she sought only to ensure that Mooney received a share of the disputed funds. He also stated that he had held the disputed funds in escrow voluntarily, and that he believed that the money in the escrow account belonged to him.

"[W]e must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . In a case that is tried to the court . . . the judge is the sole arbiter of the credibility of witnesses, and the weight to be given to their specific testimony." (Internal quotation marks omitted) *In re Felicia B.*, 56 Conn. App. 525, 526, 743 A.2d 1160, cert. denied, 252 Conn. 951, 748 A.2d 298 (2000).

The defendant's testimony at trial is consistent with and supports the court's statement in its decision that the defendant's failure to keep the disputed funds in escrow was the result of his belief that he was no longer required to do so, a belief that the court also determined was "unreasonable in light of all the facts." It was solely within the discretion of the court to evaluate firsthand the conduct, demeanor, and attitude of the defendant. Having done so, the court was apparently convinced that the defendant believed that his actions were justified, and that, although this belief was completely unreasonable, it was not wholly fabricated or pre-

textual, and, thus, the defendant negligently took the funds without actual knowledge that those funds did not belong to him. Because there is some evidence in the record that supports the court's factual finding that the defendant acted negligently, and it is not within the scope of our review to review the credibility of the defendant as a witness or to reweigh the evidence, we reject Disciplinary Counsel's claim that the court's finding was clearly erroneous.[6]

B

Disciplinary Counsel next challenges the court's finding, made in response to Disciplinary Counsel's motion for reargument, reconsideration and clarification, that $71,703.22 was the amount to be held in escrow by the defendant going forward based on counsel's July 15, 2011 agreement.[7] Disciplinary Counsel argues that the court's finding "demonstrates its misunderstanding as to several material facts in this case." We are not persuaded.

The court stated in both its memorandum of decision and in its response to the motion for articulation that the only issues that were before the court in this presentment action were whether the defendant had violated the Rules of Professional Conduct and, if so, what sanction it should impose. The court recognized that the parties remained in litigation regarding what amounts each party to the litigation was entitled to, and the court made no attempt to address that. In resolving the issues before it, however, the court also ordered that any remaining disputed funds must be escrowed going forward pending further orders from the court. The court did not initially quantify the amount that the defendant was to maintain in escrow. We construe the court's order as a valid attempt to preserve for future distribution any of the disputed funds remaining.

In response to Disciplinary Counsel's request for clarification as to the amount to be held in escrow, the court chose $71,703.22, which was an amount that the parties had agreed at the July 15, 2011 hearing represented what remained of the disputed funds following the defendant's actions. Whether those funds were held in an escrow account on July 15, 2011, or whether that number represented an amount that was commingled within the defendant's personal account is immaterial to whether the court abused its discretion by choosing that amount to be held in escrow going forward. Ultimately, the amount held in escrow has no bearing on what the parties eventually will be entitled to receive following a final resolution of the fee dispute. Because there is evidence in the record that $71,703.22 represented the actual amount of disputed funds remaining in the defendant's possession after the disputed fees were transferred to the defendant's personal account, the court's use of that figure in setting the amount the defendant was required to maintain in escrow was not

clearly erroneous but a reasonable exercise of discretion, and we reject all of Disciplinary Counsel's arguments to the contrary.

C

Disciplinary Counsel also claims that the court's finding that the defendant cooperated throughout the disciplinary proceedings is clearly erroneous. We are unconvinced that the one instance of uncooperative behavior relied on by Disciplinary Counsel in support of her claim, even if true, renders the court's more generalized and broader finding of cooperative behavior clearly erroneous.

Although the American Bar Association's Standards for Imposing Lawyer Sanctions have not been officially adopted in Connecticut, Connecticut courts have looked to them for guidance in evaluating attorney misconduct and in determining appropriate discipline. See *Burton* v. *Mottolese*, 267 Conn. 1, 55, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004). The court cited those standards in the present case. Section 9.32 sets forth a number of mitigating factors that may be considered in imposing a sanction, including "full and free disclosure to disciplinary board or cooperative attitude toward proceedings." In setting forth the relevant mitigating factors in the present case, the court stated that the defendant "was cooperative throughout the disciplinary proceedings," clearly focusing on the second half of the aforementioned factor. The court did not elaborate as to the subordinate facts underlying its finding and, although it was asked to reconsider whether the defendant truly had been cooperative in light of alleged misrepresentations made by the defendant at the July 15, 2011 hearing, the court was never asked to articulate the basis for its finding of cooperation.

Disciplinary Counsel's entire argument in support of her claim that the court's finding was clearly erroneous rests on her argument that the defendant misrepresented to her at the July 15, 2011 hearing that $71,703.22 was being held in escrow despite the fact that, according to the accounting he later provided to her, there was a zero balance in his client escrow account on July 15, 2011. It was not until after the July 15, 2011 hearing that the defendant allegedly deposited funds into his escrow account, which, according to Disciplinary Counsel, only was done "to save himself from the application for interim suspension." In its November 12, 2013 clarification, the court seems to have rejected Disciplinary Counsel's argument that the defendant made a misrepresentation regarding the escrow account on July 15, 2011, stating that it had carefully reviewed the transcript from that date and that "[n]o representation was made by the defendant or by defense counsel that the funds had continuously remained in escrow." Disciplinary Counsel has not

directly challenged that finding on appeal.

Even if we were to accept Disciplinary Counsel's argument as true, this would not necessarily render the court's finding that the defendant was cooperative "throughout the disciplinary proceedings" clearly erroneous. It is possible that a party's behavior aptly could be classified as cooperative despite a single instance of uncooperative behavior. Here, Disciplinary Counsel has not provided evidence of a pattern of uncooperative behavior, let alone a single other instance. Given the court's general finding of cooperativeness and the lack of a record regarding the basis for that finding, we cannot conclude that it is clearly erroneous solely on the basis of the single contrary example provided by Disciplinary Counsel.

III

Finally, Disciplinary Counsel claims that a reprimand was an insufficient sanction given that the defendant unilaterally and unreasonably determined that the fee dispute had been resolved and allegedly misappropriated $363,760.86 of his client's funds. Accepting, as we must, the facts found by the court, we are not convinced that the court abused its discretion by only reprimanding the defendant.

"In attorney grievance cases, in the absence of mandatory statutory sanctions, a reviewing court must defer to the discretion of the fact finder, whether it be the trial court or the committee, because the fact finder is in the best position to evaluate the evidence and the demeanor of the parties." *Statewide Grievance Committee* v. *Glass*, 46 Conn. App. 472, 479, 699 A.2d 1058 (1997). Accordingly, once a trial court has found by clear and convincing evidence that an attorney has engaged in professional misconduct, the court has "the inherent judicial power, derived from judicial responsibility for the administration of justice, to exercise sound discretion to determine what sanction to impose in light of the entire record before it." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Spirer*, 247 Conn. 762, 781, 725 A.2d 948 (1999). It is not for an appellate court to decide whether, under the circumstances of a particular case, it would have imposed a harsher sanction on the defendant. Id. "Rather, our inquiry is limited to whether the trial court abused its discretion in imposing [the sanction that it did]. The scope of review by this court on a claim that the trial court abused its discretion is well settled. [E]very reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) Id.; see also *Statewide Grievance Committee* v. *Glass*, supra, 479 ("[t]he abuse of discretion standard is such that it usually precludes the overturning of a trial court's judgment in such cases").

In the present case, the court heard three days of testimony and arguments regarding the defendant's actions as they pertained to his safeguarding of the funds in dispute. This included testimony from the defendant. The court found that although the defendant failed to exercise properly his fiduciary and professional responsibilities to keep the disputed funds safe and separate from his personal account, he did not engage in a knowing misappropriation of the funds; rather, his conduct was negligent, based on a unreasonable belief that he no longer was required to keep the disputed funds in escrow. As we have already indicated in part II A of this opinion, the court's finding that the defendant's actions were negligent is supported by the record as a whole and, when viewed with the requisite presumption of correctness, rationally supports the court's exercise of its discretion to impose a more lenient sanction. Accordingly, we cannot conclude that the court's imposition of reprimand rather than the suspension or disbarment sought by Disciplinary Counsel was a clear abuse of discretion.

Our review of the record leaves us with no doubt that the actions of the defendant were, at best, unreasonable. We also fully agree with the statements of the court in *In re Wilson* that misappropriation of a client's funds cuts to the very heart of the trust that the public places in attorneys every day and in our legal system generally.[8] It is a fundamental duty of attorneys to safeguard and protect with the utmost diligence any property held by the attorney on behalf of his or her clients. "[T]he fiduciary relationship between an attorney and a client requires absolute perfect candor, openness and honesty, and the absence of any concealment or deception." (Internal quotation marks omitted.) *Disciplinary Counsel* v. *Smigelski*, 124 Conn. App. 81, 89–90, 4 A.3d 336 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1004, cert. denied,     U.S.     , 132 S. Ct. 101, 181 L. Ed. 2d 28 (2011). Nevertheless, the mere fact that a more severe sanction might have been justified given the nature of the violation does not mean that the court here manifestly abused its discretion in imposing a lesser sanction or that the discipline imposed amounted to an injustice that must be remedied by a reversal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On the basis of the allegations in Yuille's grievance complaint, Disciplinary Counsel also filed an application for an interim suspension of the defendant's license to practice law. See *Office of Chief Disciplinary Counsel* v. *Parnoff*, Superior Court, judicial district of Fairfield, Docket No. CV-11-6019275. At the July 15, 2011 hearing on that request, the defendant produced a document indicating that $71,703.22 remained of the escrowed funds. Disciplinary Counsel reached a settlement with the defendant in which she agreed to withdraw the interim suspension application if the defendant provided her with a complete accounting of the escrow account from the time that it was established to the present by August 5, 2011. Disciplinary Counsel later withdrew the application for interim suspension.

[2] Practice Book § 2-47A was amended on June 13, 2014, to take effect on

January 1, 2015, adding the words "for a minimum of twelve years" after the word "disbarment." According to the commentary to the current revision of Practice Book § 2-47A, the amendment was intended to harmonize the language in Practice Book § 2-47A with Practice Book § 2-53 (c), which provides in relevant part that "[i]n no event shall an application for reinstatement by an attorney disbarred pursuant to the provisions of Section 2-47A be considered until after twelve years from the effective date of the disbarment. . . ." Thus, the amendment was intended to clarify that "a disbarment under Section 2-47A has to be for a minimum of twelve years." Practice Book § 2-47A, commentary. This amendment has no effect on our analysis of Practice Book § 2-47A in the present case.

[3] Practice Book § 66-7 provides in relevant part: "Any party aggrieved by the action of the trial judge as regards . . . articulation under [Practice Book §] 66-5 may, within ten days of the issuance of notice of the order sought to be reviewed, make a written motion for review to the court, to be filed with the appellate clerk, and the court may, upon such a motion, direct any action it deems proper. . . ."

[4] Practice Book § 66-5 provides in relevant part: "A motion for further articulation may be filed by any party within twenty days after issuance of notice of the filing of an articulation by the trial judge. . . ."

[5] "Our Supreme Court has directed that [if] the factual or legal basis of a trial court's decision is unclear, the appellant should file a motion for articulation." *State* v. *Mathis*, 59 Conn. App. 416, 422 n.3, 757 A.2d 55, cert. denied, 254 Conn. 941, 761 A.2d 764 (2000). To the extent that Disciplinary Counsel believed that the court was not clear about the standard it employed, she had the duty to secure an articulation in order to provide an adequate record for review. See Practice Book § 61-10. Here, although she filed a motion for articulation, she never asked the court to state the legal standard it used in deciding whether the defendant's actions were taken with knowledge that ownership of the funds was still in dispute. Accordingly, we review the claim on the basis of the record presented.

[6] It is for essentially the same reasons that we also reject Disciplinary Counsel's claim that the court improperly found that the defendant acted with honesty and integrity. The basis for that claim is the court's statement that it firmly believed that the defendant's failure to escrow the funds "was not a reflection of any lack of integrity on his part and that he did not act wilfully or with intent to deceive Yuille." Disciplinary Counsel does not argue that the record is devoid of evidence to support the court's finding, but instead argues that there is evidence that is inconsistent with the court's finding. As we have already stated, the court's findings regarding the state of mind of the defendant and his motivations are amply supported by the defendant's own testimony at trial, and we will not engage in a reevaluation of the credibility of witnesses or reweigh the evidence on appeal to determine if a contrary finding might also be supported by the record. We also emphasize that the trial court did not find, as Disciplinary Counsel suggests, that the defendant acted honestly and with integrity, but instead found that his actions did not display a lack of integrity. The absence of one thing does not necessarily establish the presence of another.

[7] In setting forth this claim, Disciplinary Counsel notes that although the court credited the defendant with holding the disputed funds in escrow for nearly nine years, "[i]n fact the defendant escrowed the funds for nearly *six* years before breaching his fiduciary duty by improperly taking them for himself." (Emphasis in original.) Because she has failed to raise this alleged error as an independent claim on appeal, we do not address it.

[8] As previously stated, the amount of the fees to which the defendant is entitled will be decided in another pending case.